Douglas D. HENSLEY, Plaintiff,

v.

ARMSTRONG WORLD INDUSTRIES, INC., a Pennsylvania corporation, Defendant.

No. CIV–91–1348–C.

United States District Court, W.D. Oklahoma.

July 8, 1992.

**654**

J. Ronald Petrikin, Crowe & Dunlevy, Tulsa, Okl., Dana J. McClendon, Crowe & Dunlevy, Oklahoma City, Okl., for plaintiff.

Rick W. Bisher, Rober B. Hale, Boettcher & Ryan, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION AND ORDER

CAUTHRON, District Judge.

### I.

Douglas Hensley worked at Armstrong World Industries from July 2, 1990, until January 7, 1991. On December 28, 1990, Hensley became ill and went home during his work shift. Several days earlier, he had recorded on company payroll records the time he thought he would be working on December 28, 1990. Due to his illness, he did not work most of the recorded hours. Although Hensley claims he made attempts to correct the records after he returned to work, he was terminated several days later before a correction was made. Armstrong characterized Hensley's termination as being for administrative theft.

Hensley brought this lawsuit against Armstrong in state court, alleging three causes of action: (1) wrongful termination in contradiction of Oklahoma public policy; (2) slander; and, as far as the Court can determine, (3) breach of contract.* Armstrong moves for summary judgment. Hensley responds in opposition, and the matter is at issue.

---

* Quite less than a model of clarity, the state court petition's third cause of action states that Armstrong "violated it's [sic] own standards, policies and procedures in harassing [Hensley] and in discharging [him]." Liberally construed, together with the pleadings on file, the Court interprets this claim as one for breach of contract. The action was removed to this Court on August 23, 1991.

If every fact alleged by Hensley were true, the most he would have is an unfortunate series of circumstances resulting in the loss of his job. Perhaps Armstrong terminated Hensley before considering all of the attendant circumstances, in which case the termination was unfair. But as is shown in this Memorandum, Armstrong's conduct does not violate any Oklahoma public policy. Nor has Armstrong, as a matter of law, slandered Hensley. And contrary to Hensley's assertions, the summary judgment evidence establishes without question that he was merely an at-will employee, no employment contract existed, and no breach of any employment agreement has occurred. Accordingly, Armstrong is entitled to complete summary judgment, and this case is stricken from the trial docket.

## II. Standard For Summary Judgment

The facts presented to the court upon a motion for summary judgment must be construed in a light most favorable to the nonmoving party. *Board of Educ. v. Pico,* 457 U.S. 853, 864, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982); *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If there can be but one reasonable conclusion as to the material facts, summary judgment is appropriate. Only genuine disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Finally, the movant must show entitlement to judgment as a matter of law. *Awbrey v. Pennzoil Co.,* 961 F.2d 928 (10th Cir.1992); *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir.1985); Fed.R.Civ.P. 56(c).

Although the Court must view the facts and inferences drawn from the record in a light most favorable to the nonmoving party, "even under this standard there are cases *where the evidence is so weak that the case does not raise a genuine issue of fact.*" *Burnette v. Dow Chem. Co.,* 849 F.2d 1269, 1273 (10th Cir.1988) (emphasis added). As stated by the Supreme Court, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

The Supreme Court articulated the standard to be used in summary judgment cases, emphasizing the "requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510 (emphasis in original). A dispute is "genuine" "if a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The Court stated that the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. "The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [party]." *Id.* at 252, 106 S.Ct. at 2512.

## III. Undisputed Facts

Rule 14(B) of the Western District of Oklahoma provides a framework for determining undisputed facts at the summary judgment stage. The Rule provides:

The brief in support of a motion for summary judgment (or partial summary judgment) shall begin with a section that contains a concise statement of material facts as to which movant contends no genuine issue exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies. The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of the

movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

W.D.Okla.R. 14(B).

Armstrong's motion for summary judgment asserted six undisputed facts, none of which were specifically controverted by Hensley, which are therefore deemed admitted. Even without applying Rule 14(B)'s default provision, the summary judgment evidence clearly supports each undisputed fact. The pertinent undisputed facts, as numbered by Armstrong, are:

2. Hensley was terminated for failing to correct an inaccurate time sheet which he knew falsely reported his attendance.

3. Hensley admitted that his time sheet was inaccurate.

4. Hensley admits that he failed to correct the inaccuracy, although he contends he attempted to correct the time sheet, but was unable to see his supervisor.

6. Hensley's employment was for an unspecified term.

Defendant's brief in support of motion for summary judgment, (Feb. 14, 1992), pp. 2–3 (hereafter "defendant's brief").

### IV. Public Policy

■ Hensley vigorously contends that his termination was in violation of public policy, but, as Armstrong points out, he fails to identify the public policy. The Court knows of no public policy that prohibits the termination of an employee suspected of theft or wrongdoing. In *Burk v. K–Mart Corp.*, 770 P.2d 24 (Okl.1989), the case relied upon by Hensley, the public policy exception to the at-will employment doctrine was discussed. The court held that "public policy exception[s] must be tightly circumscribed." *Id.* at 29. In *Burk*, the public policy exception was described as being where an "employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent

with a clear and compelling public policy." *Id.* Again, Hensley has not identified any such policy.

On the facts of this case, there is no policy prohibiting Hensley's termination. Unless an exception exists, "an employer may discharge an employee for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong." *Id.* at 26 (citations omitted). There is no duty of good faith and fair dealing in every employment contract. *Id.* To hold otherwise would be to "'subject each discharge to judicial incursions into the amorphous concept of bad faith.'" *Id.* at 27 (quoting *Hinson v. Cameron*, 742 P.2d 549, 554 (Okl.1987)).

Armstrong's motion for summary judgment on Hensley's first cause of action is granted.

### V. Slander

According to the summary judgment evidence, Hensley's allegations of slander flow from five different circumstances:

1. The accusation by Armstrong that Hensley committed administrative theft.

2. An alleged statement by an Armstrong supervisor to a Domino's Pizza manager that Hensley was fired because he cheated on his time sheets.

3. Hensley's disclosure of the reasons for being fired whenever he applies for a job elsewhere.

4. Statements regarding the circumstances of the termination during Hensley's unemployment compensation proceedings.

5. Hensley's explanation of the termination to his friends and others.

■ Armstrong contends that circumstances three and five are self-disclosures and do not constitute publication. Slander requires the publication of a statement that is false and unprivileged. *M.F. Patterson Dental Supply Co. v. Wadley*, 401 F.2d 167, 171 (10th Cir.1968). Publication must be to someone other than the slandered person or to the alleged slanderer. *Id* at 171; *McKinzie v. Huckaby*, 112 F.Supp.

642, 645 (W.D.Okla.1953). Communication of the alleged slanderous statement from one corporate employee to a fellow employee is not publication, as the corporation is deemed to be communicating with itself. *Messina v. Kroblin Transp. Sys.*, 903 F.2d 1306, 1309 (10th Cir.1990); *Wadley*, 401 F.2d at 171. These authorities make it clear that under the first circumstance described above, communication of the theft allegation among Armstrong officials is not publication.

As to Armstrong's contention that circumstances three and five (Hensley's job applications and his talking with friends and others) constitute self-publication, Armstrong argues that "self-publication" is not publication under Oklahoma slander law. Hensley's response is silent on this point.

■ Although Oklahoma has not expressly rejected the "self-publication" theory, the vast majority of states considering the issue reject it. *See e.g. Church of Scientology v. Green*, 354 F.Supp. 800, 804 (S.D.N.Y.1973); *Gore v. Health–Tex, Inc.*, 567 So.2d 1307, 1308 (Ala.1990); *Lunz v. Neuman*, 48 Wash.2d 26, 290 P.2d 697, 701–702 (1955); *DeLeon v. St. Joseph Hosp.*, 871 F.2d 1229 (4th Cir.) (noting that self-publication theory does not have credible acceptance, but instead has attracted criticism), *cert. denied*, 493 U.S. 825, 110 S.Ct. 87, 107 L.Ed.2d 52 (1989). This Court believes that Oklahoma would not follow the self-publication theory, and accordingly finds that Hensley's re-publication of the alleged defamatory statements to his friends, others, and potential employers does not give rise to a claim for slander.

■ Another point Armstrong makes to which Hensley is silent regards alleged slanderous publication at the unemployment compensation proceeding. Armstrong points out that to be slanderous, a statement must be non-privileged, and that pursuant to 12 Okla.Stat. § 1443.1, communications made during "any legislative or judicial proceeding or any other proceeding authorized by law" are privileged. Numerous authorities are cited by Armstrong to conclusively show that unemployment compensation hearings are "proceedings" within the scope of § 1443.1. Defendant's brief at 13–14. Thus any statements regarding Hensley's termination made during the unemployment compensation hearing are privileged and cannot be the basis for a slander action.

■ The only remaining publication to discuss is the alleged statement by an Armstrong supervisor to a Domino's Pizza manager that Hensley was fired for cheating. On its face, the statement is true. Defendant's brief at 1, undisputed fact No. 2. Hensley was in fact discharged for a perceived attempt to steal time from Armstrong. Truth is an absolute defense to slander. *Anderson v. Cramlet*, 789 F.2d 840, 843 (10th Cir.1986); *Melton v. Oklahoma City*, 928 F.2d 920, 929 (10th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 296–97, 116 L.Ed.2d 241 (1991); *Martin v. Griffin Television, Inc.*, 549 P.2d 85, 93–94 (Okl.1976).

■ Even without considering the truth of the statement, the summary judgment evidence does not reveal that the publisher of the statement, LaDonna McCowan, was acting in the scope of her employment when the statement was published. As McCowan is not a defendant here, before her actions can hold her employer liable, she must have been acting within the scope of her duties. *Tulsa Gen. Drivers, Warehousemen, & Helpers Union v. Conley*, 288 P.2d 750, 754 (Okl.1955). The summary judgment evidence is that during a conversation with the Domino's manager, Mike Ellis, Mr. Ellis asked Ms. McCowan about the circumstances of Hensley's termination. Ms. McCowan purportedly replied that Hensley "had written a time on the time sheet that he wasn't there, and he [Hensley] was discharged." Plaintiff's response, ex. E, p. 63. This conversation allegedly occurred away from Ms. McCowan's workplace, a fact Hensley has not disputed.

In this instance, Armstrong contends that Ms. McCowan was not acting in the scope of her employment. The Court agrees. The most persuasive authority and

argument on this point is made by Hensley. Citing *Roring v. Hoggard,* 326 P.2d 812 (Okl.1958), Hensley argues that an employee acts within the scope of her employment if the action is

> *fairly incident to [the] employer[']s business,* and is done while [the] employee is engaged upon such business and though mistakenly or ill-advisedly, *with a view to further the employer's interest,* or from some impulse of emotion which naturally grew out [of] or was incident to *[an] attempt to perform [the] employer's business* [,] and did not arise wholly from some external or personal motive.

Plaintiff's response at 10 (emphasis added). There is *no* showing whatsoever that Ms. McCowan's conversation with Mr. Ellis was attendant to the employer's business, or was intended to further an interest of the employer. Rather, it appears it was merely an innocent conversation between two individuals, neither acting for their employer, nor intending to advance their employer's interests. The summary judgment evidence indicating that Ms. McCowan was acting within the scope of her employment is non-existent, or so weak that as a matter of law, it does not create a material issue of fact. *See Burnette,* 849 F.2d at 1273 (discussed in Part II above).

As none of the five circumstances detailed by Hensley can give rise to a slander claim, Armstrong's motion for summary judgment on this claim must also be granted.

## VI. Breach of Contract

There is no need to discuss the specific facts that Hensley contends constitute a violation of an employment contract, as the Court finds that as a matter of law, no employment contract existed, and Hensley was an at-will employee. Because there is no such contract, all contract-related claims must fail.

The first item that Hensley contends creates an employment contract is the agreement he signed with Armstrong on July 2, 1990. *See* plaintiff's response, ex. 2. This agreement contains no term (length) of employment, no procedures for termination, and indeed, no other conditions of employment other than an agreement regarding patents, inventions, discoveries, and improvements. As described by Armstrong, this agreement does nothing other than protect Armstrong's proprietary interests in any inventions its employees make during their employment.

The construction of this contract is not, as Hensley contends, a question of fact for the jury. In the first instance, the interpretation of a contract is for the court. *Carland v. Metropolitan Life Ins. Co.,* 935 F.2d 1114, 1120 (10th Cir.1991); *United States v. Continental Oil Co.,* 364 F.2d 516, 521 (10th Cir.1966). The Court finds that as a matter of law, the July 2, 1990, agreement does not constitute an employment contract.

Hensley also argues that he was denied due process of law because he was terminated after only a short meeting with his supervisor. Armstrong is a private employer, and absent contract provisions to the contrary, owes Hensley no due process whatsoever. *Tulsa Professional Collection Servs. v. Pope,* 485 U.S. 478, 486, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988); *Behagen v. Amateur Basketball Ass'n,* 884 F.2d 524 (10th Cir.1988), *cert. denied sub nom.,* 495 U.S. 918, 110 S.Ct. 1947, 109 L.Ed.2d 310 (1990). Hensley's contention in this regard is utterly frivolous.

Finally, Hensley points to an employee's handbook and argues that it also creates an employment contract that was breached. But the only pages included for the Court's review are those concerning the disciplinary procedures. Plaintiff's response, ex. F. Paragraph 5 under these procedures addresses terminations, and provides that an employee may be terminated "as a result of a serious offense." *Id.* Although there is no definition of "serious offense," the Court does not read this paragraph as creating a contract limiting terminations to such events. But moreover, falsifying payroll records, or failing to correct errors on payroll records, certainly is a serious matter in any company, and constitutes a serious offense. In short, there is no viable contract claim under the portion of the

employee handbook that is part of the summary judgment record.

Accordingly, Armstrong is entitled to summary judgment on Hensley's contract-related claims.

### CONCLUSION

For the reasons set forth above, the Court finds there is no genuine issue of material fact, and that defendant Armstrong World Industries is entitled to summary judgment on all of plaintiff Douglas Hensley's claims. This matter is stricken from the trial docket.

IT IS SO ORDERED.