IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

FILED

FOR PUBLICATION
July 12, 1999
Filed: July 12, 1999
Cecil Crowson, Jr.
Appellate Court Clerk

KAREN SULLIVAN,                    )
                                   )
        Appellee,                  )
                                   )        SHELBY CIRCUIT
                                   )
                                   )
Vs.                                )        HON. KAREN WILLIAMS,
                                   )               JUDGE
                                   )
                                   )
BAPTIST MEMORIAL HOSPITAL,         )
                                   )
        Appellant.                 )        No.  02-S-01-9804-CV-00032


**For the Appellant:**                    **For Appellee:**

Paul E. Prather                    Stephen H. Biller
Steven W. Likens                   Memphis, Tennessee
KIESEWETTER WISE KAPLAN
 SCHWIMMER & PRATHER, PLC          Sara L. Hall
Memphis, Tennessee                 Memphis, Tennessee


# O P I N I O N


COURT OF APPEALS REVERSED;
TRIAL COURT JUDGMENT AFFIRMED.                    ANDERSON, C.J

We granted the appeal in this defamation case to determine whether the element of publication is satisfied when an employee is compelled to disclose to a prospective employer the reason given for termination by a former employer. The trial court granted summary judgment to defendants, concluding that the plaintiff's self-published statements failed to satisfy the publication element of defamation. The Court of Appeals reversed, adopting the minority view that self-publication satisfies the publication element when 1) the defendant can reasonably foresee that the plaintiff will be compelled to publish the defamatory statement and 2) the plaintiff is in fact compelled to publish the defamatory statement on subsequent employment applications.

After our review of the record and applicable law, we conclude that compelled self-publication does not satisfy the publication element essential to a prima facie case of defamation because it is contrary to the well-settled law of this State, which reflects the majority view, and contrary to important policy principles. Accordingly, we reverse the Court of Appeals' judgment and reinstate the trial court's grant of summary judgment to the defendant.

## BACKGROUND

Plaintiff Karen Sullivan ("Sullivan") worked full-time for defendant Baptist Memorial Hospital ("Baptist") as a neonatal nurse in the neonatal intensive care unit. While working for Baptist, Sullivan also performed temporary nursing services for St. Francis Hospital ("St. Francis") through a nursing service staffing agency. St. Francis was in the process of setting up its own neonatal unit and employed several Baptist nurses.

According to the record, Baptist grew suspicious that its nurses were taking Baptist's property, i.e. certain medical devices, in an effort to assist St. Francis in the development of its neonatal unit. That suspicion focused on Sullivan.

Thereafter, Susan Parsons ("Parsons"), a Baptist nurse, said she told Sullivan's supervisor that Sullivan took neonatal IV catheters from Baptist to use at St. Francis.[1] Parsons also said she had a conversation with Sullivan in which Sullivan confided that she had taken the angiocaths to St. Francis, about which Parsons testified as follows:

> [Sullivan] preceded to tell me that [a St. Francis physician] had even asked her opinion of pumps, what kind of pumps to order for their unit. Then she went on to say that I even took some angiocaths and covered her mouth, put her hand over her mouth and started speaking quietly and softly and looked around the room as if to see if there was anybody around.
>
> And at the same time she said, I guess I shouldn't say that too loudly. But I took those over there because the old angiocaths they were using were the old type we used to use here. And they didn't work very well so I took them some of our newer ones.

When Baptist confronted Sullivan with Parsons' accusations, Sullivan denied the conversation and denied taking Baptist's property for use at St. Francis. Nonetheless, Baptist terminated Sullivan for misappropriating its property.

After her termination, Sullivan applied for a neonatal nurse position at both Methodist Hospital and Jackson Madison County Hospital. She says that she was compelled to reveal the defamatory reason Baptist terminated her, and, as a result, neither hospital hired her. Sullivan then filed suit in circuit court against Baptist alleging defamation and other causes of action.[2]

Baptist filed a motion for summary judgment on the grounds that it did not publish the defamatory information, which is an essential element of a defamation action. Sullivan conceded that Baptist did not publish the information but contended that the publication element of her defamation claim was satisfied because she was

---

[1] According to the record, the IV catheters were .24 gauge angiocaths used to start IVs on infants.

[2] Sullivan also named Parsons and her supervisor, Pat Thomas, as defendants, but she appeals only as to the claim against Baptist for defamation.

compelled to publish Baptist's defamatory statements on subsequent employment applications.

The trial court granted Baptist's motion for summary judgment, on the grounds that self-published statements do not satisfy the publication element of a cause of action for defamation and are not actionable under Tennessee law. The Court of Appeals reversed. It reasoned that "the law in Tennessee should recognize the principle of compelled self-publication," and held that the publication element required for a defamation claim can be met if 1) the publication of the defamatory statement is reasonably foreseeable to the defendant, and 2) the plaintiff is compelled to republish the defamatory statement. The Court of Appeals limited its holding to apply only "to those cases in an employment setting in which the plaintiff is forced to republish false and defamatory reasons for his or her termination on subsequent job applications."

We granted the defendant's application for permission to appeal.

## ANALYSIS

We begin our analysis by noting the applicable standard of review. The trial court's grant of summary judgment is purely a question of law; accordingly, our review is de novo, and no presumption of correctness attaches to the lower courts' judgments. E.g., City of Tullahoma v. Bedford County, 938 S.W.2d 408, 412 (Tenn. 1997).

To establish a prima facie case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. See Restatement (Second) of Torts § 580 B (1977); Press, Inc. v. Verran, 569 S.W.2d 435, 442 (Tenn. 1978). "Publication" is a term of art meaning the communication of defamatory matter to a third person. Quality Auto Parts Co. v. Bluff City Buick Co., 876 S.W.2d 818, 821 (Tenn. 1994).

The sole issue involved in this appeal is whether Sullivan's "compelled" repeating of Baptist's defamatory reasons for termination satisfies the publication element of a defamation action. Adopting the Court of Appeals' reasoning, Sullivan argues that the publication element is satisfied because: 1) Baptist could reasonably foresee that Sullivan would have to communicate the defamatory reasons for her termination to a third party; and 2) Sullivan was in fact compelled by prospective employers to reveal the defamatory reasons for her termination.

Urging this Court to adopt the doctrine of self-publication and to affirm the Court of Appeals, Sullivan insists that only "compelled" self-publication in an employment setting, as opposed to voluntary self-publication, should be actionable. Baptist, on the other hand, argues that the Court of Appeals' decision is contrary to precedent, the majority view, Tennessee's employee-at-will doctrine, important jurisprudential concerns, and other policy principles.

This Court first considered the doctrine of self-publication in a non-employment context in Sylvis v. Miller, 96 Tenn. 94, 33 S.W. 921 (1896). In Sylvis, the plaintiff received a defamatory letter through the mail which he opened and showed to several friends and relatives. The trial court instructed the jury that the plaintiff's publication of defendant's defamatory statements would not support a defamation action. On appeal, this Court reasoned that the "defendant is not answerable for anything the plaintiff may choose to do with the letter after it has once safely reached his hands," and held that "[i]f a person receives a letter containing libelous matter, he will not be justified in publishing it." Id. at 922. Accordingly, we affirmed the trial court.

Three years later, in Kansas City, M. & B. R. Co. v. Delaney, 102 Tenn. 289, 52 S.W. 151 (1899), this Court was again presented with an opportunity to adopt the doctrine of self-publication, this time in an employment setting. In Delaney, the plaintiff's agent obtained a recommendation letter from plaintiff's previous employer, which alleged that plaintiff, a union member, had left his employment during a strike.

-5-

Though the defendant showed the letter only to the plaintiff's agent, the plaintiff showed the letter to potential employers. This Court stated that "[u]nder the authorities, the company is not liable for any of the consequences of the act of [plaintiff] in making publication of the letter after it reached his hands." Id. at 152. Applying Sylvis, this Court held that the plaintiff was not justified in publishing the defamatory letter. Id. at 152-53.

Sullivan attempts to distinguish this early Tennessee precedent by arguing that the self-publication in Sylvis was outside the employment context and the self-publication in Delaney was voluntary. Sullivan contends that only "compelled" self-publication in an employment context should be actionable.

As one commentator has observed, however, "compulsion" is present in every defamation case involving self-publication of the reason for termination by a former employer:

> "Compulsion" within the meaning of the doctrine would automatically occur when a prospective employer asks an applicant for his or her employment history and reason(s) for leaving the previous place of employment, and the applicant repeats the termination reason given by the former employer. All former employers will be held to have foreseen or to have had an obligation to foresee that the former employee would be asked to provide this information and would thus be "compelled" to answer.

Ronald Turner, Compelled Self-Publication: How Discharge Begets Defamation, 14 Empl. Rel. L.J. 19, 27-28 (1988). Thus, we do not find persuasive Sullivan's argument that our prior decisions rejecting the doctrine of self-publication are distinguishable because the self-publication in those cases was voluntary.

Other states are split on how to resolve the question of self-publication. The minority view is that self-publication in the employment setting satisfies the publication requirement of defamation because the plaintiff is effectively compelled to publish the defamatory material to prospective employers. Thus, the self-publication is reasonably

foreseeable to the former employer.  See, e.g., McKinney v. County of Santa Clara, 110 Cal. App. 3d 787, 168 Cal. Rptr. 89 (Cal. Ct. App. 1980); Munsell v. Ideal Food Stores, 494 P.2d 1063 (Kan. 1972); Grist v. Upjohn Co., 168 N.W.2d 389 (Mich. Ct. App. 1969); Lewis v. Equitable Life Assurance Soc'y, 389 N.W.2d 876 (Minn. 1986).

The majority of states addressing the issue do not recognize self-publication as constituting publication for defamation purposes, even when the publication is compelled in the employment setting.  See, e.g., Gore v. Health-Tex, Inc., 567 So. 2d 1307 (Ala. 1990); Layne v. Builders Plumbing Supply Co., 569 N.E.2d 1104 (Ill. App. Ct. 1991) Yetter v. Ward Trucking Corp., 585 A.2d 1022 (Pa. Super. Ct. 1991).[3]  Rejection of the doctrine of compelled self-publication is based on policy reasons, including the public's interest in open communication about employment information and limiting the scope of defamation liability:

> Both employers and employees have significant interest in open communication about job-related problems.  Further, it is in the public interest that information regarding an employee's discharge be readily available to the discharged employee and to prospective employers.  In our opinion, the doctrine of compelled self-defamation unduly burdens the free communication of views and unreasonably broadens the scope of defamation liability.

Layne, 569 N.E.2d at 1111 (citation omitted).

We agree that the potential for defamation liability every time an employee is terminated would chill communications in the work place, preventing employers from disclosing reasons for their business decisions, and would negatively affect grievance

___

[3]	Federal courts applying state law also have recognized the majority rule.  De Leon v. Saint Joseph Hosp., Inc., 871 F.2d 1229, 1237 (4th Cir. 1989) (applying Maryland law); Spratt v. Northern Automotive Corp., 958 F. Supp. 456, 465 (D. Ariz. 1996) (reasoning that Arizona courts are not among those that would recognize a tort of compelled self-publication); Sarratore v. Longview Van Corp., 666 F. Supp. 1257, 1263 (N.D. Ind. 1987) (reasoning that the doctrine of self-publication is not the law in Indiana); Hensley v. Armstrong World Indus., Inc., 798 F. Supp. 653, 657 (W.D. Okla. 1992) (stating that Oklahoma would follow the "vast majority of states" considering the theory of self-publication and reject it). In other jurisdictions, the issue appears to be undecided.  Weintraub v. Phillips, Nizer, Benjamin, Krim & Ballon, 568 N.Y.S.2d 84, 85 (N.Y. App. Div. 1991) (stating that New York law does not recognize a defamation claim where the plaintiff voluntarily republished the alleged defamatory words); Doe v. Smithkline Beecham Corp., 855 S.W.2d 248 (Tex. App. 1993) ("While we are aware of non-Texas authority allowing 'self-defamation' claims under only a foreseeability test, the Texas Supreme Court has yet to adopt or approve such a broad cause of action.  We decline to do so."). For an overview of cases considering the self-publication doctrine, see generally David P. Chapus, Annotation, Publication of Allegedly Defamatory Matter by Plaintiff ("Self-Publication") as Sufficient to Support Defamation Action, 62 A.L.R. 4th 616 (1988).

procedures intended to benefit the discharged employee. As one commentator has observed:

> A shutdown of communication would hurt both employees and employers. Employees falsely accused of misconduct may be wrongfully terminated because they would never have a chance to rebut the false accusations. Employees who may be able to improve substandard job performances may fail to do so because needed feedback is withheld. . . . It seems that both employees and employers stand to lose if employers adopt a policy of silence. . . . Unfortunately, employees will bear the costs of such a policy without a corresponding benefit.

Louis B. Eble, Self-Publication Defamation: Employee Right or Employee Burden?, 47 Baylor L. Rev. 745, 779-80 (1995). Moreover, recognition of the self-publication doctrine may further harm employees who have been fired for discriminatory reasons. "Normally, a factfinder would be justifiably suspicious if an employer fired an employee in a protected group and refused to explain the reason for the termination at the time of discharge." Id. at 784. In light of the self-publication doctrine, however, an employer's silence could justifiably be viewed as savvy rather than suspicious. Id. at 784-85; see, e.g., Layne, 569 N.E.2d at 1111 ("[T]he only way an employer could seemingly avoid litigation and the possible liability for substantial damages in situations such as the instant one would be to deter from communicating to an employee, as well as to a third person, the reason the employer felt justified in terminating employment."); see also Lewis, 389 N.W.2d at 896 (Kelley, J., dissenting).

We conclude that important policy concerns weigh in favor of our adherence to the majority view. For instance, plaintiffs allowed to avail themselves of the self-publication doctrine would have less incentive to mitigate damages. Layne, 569 N.E.2d at 1111. Because the statute of limitations in a defamation case begins to run from the date of publication, Quality Auto Parts Co., 876 S.W.2d at 821-22, and since a new cause of action arises with each publication, see id., a plaintiff relying on the doctrine of self-publication would not only have the ability to control the statute of limitations but also the number of causes of action which arise. In other words, a plaintiff need only apply for a job in order to create or renew a claim for "compelled" self-publication.

Consequently, the defendant employer could potentially be subject to liability throughout the plaintiff's lifetime.

Moreover, we conclude that the doctrine of compelled self-publication conflicts with Tennessee's employee-at-will doctrine. Although Sullivan contends that an employer would be liable under the self-publication doctrine "only" for negligently investigating and then stating a defamatory reason for termination when it is reasonably foreseeably that the former employee will be compelled to repeat and "publish" this defamatory reason to potential employers, an employer in Tennessee has no duty to investigate before terminating an at-will employee. Cf. Stein v. Davidson Hotel Co., 945 S.W.2d 714, 717 (Tenn. 1997).

For over a century, Tennessee has recognized that, with limited exceptions not applicable here, an employer may terminate an employment at-will relationship at any time for good cause, bad cause, or no cause. E.g., Payne v. Western & Atl. R.R., 81 Tenn. 507, 518-20 (1884); Forrester v. Stockstill, 869 S.W.2d 328, 330 (Tenn. 1994). To adopt the doctrine of compelled self-publication and to impose a duty on employers to conduct a thorough investigation leading to accurate conclusions would significantly compromise these well-settled principles encompassed by the at-will employment doctrine in Tennessee. Cf. De Leon v. Saint Joseph Hosp., Inc., 871 F.2d 1229, 1237 (4th Cir. 1989) ("[T]he theory of self-publication might visit liability for defamation on every . . . employer each time a job applicant is rejected.").

In addition, we note that the legislature has spoken on the issue of the employer's liability incurred from communicating information about an employee. Tenn. Code Ann. § 50-1-105 (Supp. 1998). This section provides that:

> [a]ny employer that, upon request by a prospective employer or a current or former employee, provides truthful, fair and unbiased information about a current or former employee's job performance is presumed to be acting in good faith and is granted a qualified immunity for the disclosure and the consequences of the disclosure. The presumption of good

faith is rebuttable upon a showing by a preponderance of the
evidence that the information disclosed was:

> (1) Knowingly false;
> (2) Deliberately misleading;
> (3) Disclosed for a malicious purpose;
> (4) Disclosed in reckless disregard for its falsity or defamatory
> nature; or
> (5) Violative of the current or former employee's civil rights
> pursuant to current employment discrimination laws.

Id. Under this statute, mere negligence is not enough to rebut the presumption in favor of the employer's good faith. Id. In contrast, defamation may be proven by establishing that a party published a false and defaming statement with reckless disregard for the truth or with negligence in failing to ascertain the truth. Verran, 569 S.W.2d at 442. Thus, under the statute, an employer could not be held liable for disclosing allegedly defamatory information about which it was only negligent in ascertaining the truth. It follows, therefore, that an employer should not be held liable for disclosure of this same information when it is self-published by a former employee.

Accordingly, after considering the arguments of both parties, the record, and applicable law, we conclude that our holdings in Sylvis and Delaney are in accordance with the well-reasoned majority rule in other jurisdictions and are controlling in this case. We therefore decline to adopt the doctrine of compelled self-publication.

## CONCLUSION

In our view, the doctrine of compelled self-publication is contrary not only to the well-settled law of this state and the majority view but also important policy principles. Accordingly, the Court of Appeals is reversed. We reinstate the judgment of the trial court granting summary judgment to the defendant and remand to the trial court for further necessary proceedings in accordance with this opinion. Costs of this appeal are taxed against the plaintiff for which execution shall issue if necessary.

_____
RILEY ANDERSON, CHIEF JUSTICE

-10-

**CONCUR:**
Drowota, Birch, Holder, and Barker, JJ.