# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 7, 2001 Session

## CLEMENT F. BERNARD, M.D. v. SUMNER REGIONAL HEALTH SYSTEMS, INC.

**A Direct Appeal from the Circuit Court for Sumner County.**
**No. 19362-C  The Honorable Arthur McClellan, Judge.**

**No. M2000-01478-COA-R3-CV - Filed March 26, 2002**

_____

On or about March 26, 1999, the appellee Sumner Regional Health Systems, Inc. revoked appellant Clement F. Bernard, M.D. privileges to practice medicine at Sumner Regional Medical Center.  Consequently, Dr. Bernard filed a complaint on March 29, 1999, alleging procurement of breach of contract and defamation.  On February 9, 2000, Sumner Regional Health Systems filed a Motion for Summary Judgment on the grounds that Dr. Bernard could not establish viable claims for procurement of breach of contract or defamation.  The trial court granted Sumner Regional's motion.  On June 12, 2000, Dr. Bernard filed a Notice of Appeal and this litigation resulted.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DON R. ASH, SP. J., delivered the opinion of the court, in which FARMER, J., and CRAWFORD, J joined.

Joe Bednarz, Jr. and Joe Bednarz, Sr., Nashville, Tennessee, for the appellant, Clement F. Bernard, M.D.

James C. Bradshaw, III and Jonathan D. Rose, Nashville, Tennessee, for the appellee, Sumner Regional Health Systems, Inc.

## OPINION

I.

Clement F. Bernard, M.D. ("Dr. Bernard") was hired by St. Thomas Medical Group to staff a cardiac catheterization unit at Sumner Regional Medical Center in Gallatin, Tennessee. The catheterization unit was a joint venture between Sumner Regional and St. Thomas Hospital. Dr. Bernard was granted privileges at Sumner Regional to practice in June of 1997.

In May of 1998, Dr. Bernard met with the vice-president of Sumner Regional, Bill Mize. During this meeting, Dr. Bernard was informed that there had been an unofficial complaint lodged against him concerning inappropriate language and humor.

On February 5, 1999, Dr. Bernard performed a presentation concerning the diagnostic equipment available at Sumner Regional. The presentation was in front of several physicians and various staff members of Sumner Regional. The parties dispute the alleged events that occurred during the presentation.

Jan Hallmark ("Ms. Hallmark"), the Senior Vice President of Sumner Regional, alleged that during the presentation Dr. Bernard used his laser pointer in a sexually explicit manner. According to Ms. Hallmark's deposition, Dr. Bernard pointed the laser at her chest and made some reference regarding a country music entertainer. Ms. Hallmark cannot remember the specific remark Dr. Bernard made to her in relation to the country music entertainer. According to the depositions of Ms. Hallmark, Brian Diller, Frank Stricklin, and Sandi Hester the comments and actions of Dr. Bernard were "shocking", "embarrassing", "stupid", "disconcerting", and "mortifying". Ms. Hallmark supervises each of these individuals.

Conversely, Freda West submitted an affidavit stating she never saw Dr. Bernard point his laser pointer at anyone's breasts, nor did she hear him make any derogatory statements that could have been construed as sexual harassment. Furthermore, Cindy Hill, a nurse in cardiographics, testified that the country music entertainer reference made by Dr. Bernard was made to illustrate the problems encountered with distortion in the images in mammography with women with large breasts.

Following the events on February 5, 1999, Ms. Hallmark reported the alleged incident to William Sugg ("Mr. Sugg"), Sumner Regional's Chief Executive Officer. Mr. Sugg placed Ms. Hallmark in charge of collecting information and investigating the incident. During the investigation process, Ms. Hallmark asked those present at the event to place what they saw in writing. Additionally, two other participants provided Ms. Hallmark with written complaints. Several other participants can corroborate to some extent the events surrounding the presentation. At the conclusion of Ms. Hallmark's investigation, Mr. Sugg determined the actions of Dr. Bernard violated Sumner Regional's sexual harassment policy. Mr. Sugg presented this matter to the Executive Committee of Sumner Regional's Board of Directors ("The Board"). The Board determined that Dr. Bernard's privileges with Sumner Regional would be revoked. Following the meeting, Mr. Sugg informed St. Thomas Medical Group by letter that Dr. Bernard was "no longer welcomed at Sumner Regional or as St. Thomas Medical Group's local cardiologist." Furthermore, in a letter dated March 1, 1999, Mr. Sugg asked St. Thomas to "facilitate the voluntary relinquishment of Dr. Bernard's medical staff privileges at Sumner Regional. Mr. Sugg did not recommend further action other than removing Dr. Bernard privileges from Sumner Regional.

On March 5, 1999, Dr. Bernard met with representatives of St. Thomas Hospital and with St. Thomas Medical Group's attorney, Nancy Jones. During the meeting, Dr. Bernard was informed by Nancy Jones that he had been accused of sexual harassment. Furthermore, Nancy Jones prepared a letter of resignation to be signed by Dr. Bernard. Dr. Bernard signed the letter

of resignation and was placed on administrative leave with pay and benefits until both parties could reach a mutually agreeable termination agreement. Subsequently, Dr. Bernard was given time to review the Mutual Termination Agreement. On March 26, 1999, Dr. Bernard was notified by St. Thomas that if he did not sign the Mutual Termination Agreement they would issue a notice of termination.

Dr. Bernard refused to sign the Agreement. On March 29, 1999, Dr. Bernard filed a complaint citing procurement of breach of contract and defamation. Almost a year later, the trial court granted Sumner Regional's Motion for Summary Judgment. This appeal followed. The issues before the Court are whether the trial court erred in granting summary judgment in favor of Sumner Regional regarding procurement of breach of contract and defamation and whether the trial court abused its discretion in denying Dr. Bernard further discovery.

II.

The trial court's decision regarding a summary judgment motion is reviewed *de novo* with no presumption of correctness pertaining to the trial court's determination. **Warren v. Estate of Kirk**, 954 S.W.2d 722, 723 (Tenn. 1997).

If the court finds there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, the appeals court must affirm the trial court's grant of summary judgment. **See Byrd v. Hall**, 847 S.W.2d 208, 211 (Tenn. 1993). Furthermore, an order granting summary judgment must be denied when there is a legitimate dispute as to any material fact or any doubt as to the conclusions to be drawn from the undisputed facts. **Id.**

According to Tenn.R.Civ.P. 56.04, a court must decide "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" when determining whether a grant of summary judgment is appropriate.

When evaluating a summary judgment motion, the Court in **Byrd**, 847 S.W.2d at 214, established three essential elements. The elements for the court to consider are: "(1) whether a factual dispute exists; (2) whether that fact is material; and (3) whether that fact creates a genuine issue for trial." **Id.**

In a summary judgment motion, the moving party has the burden of persuading the court that no genuine issues of material fact exist. **Id.** at 215. The expression "genuine issue" refers to genuine factual issues not issues involving legal conclusions to be taken from the facts. **Id.** at 211. Once the moving party satisfies their burden, the burden shifts to the non-moving party to articulate specific facts to show there is a genuine issue of material fact requiring a submission to the jury. **Id.** at 215 (finding that a disputed fact must be material before it can preclude summary judgment on an issue). However, "the non-moving party may not rely on allegations or denials of his pleadings in carrying out his burden." **Id.** In addition, the mere scintilla of evidence in support of the non-moving party's position is inadequate to establish an issue of fact. **Id.** at 212. To determine whether summary judgment is appropriate, the court must view the evidence in the

light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. **Id.** at 210-11.

III.

To determine whether summary judgment in favor of Sumner Regional is appropriate in this case, we must first determine the law in Tennessee regarding procurement of breach of contract. In order to state a claim for procurement of breach of contract, it is well settled in Tennessee that the plaintiff has the burden of proving the following elements:

1.) The existence of a legal contract;

2.) The alleged wrongdoer had knowledge of the existence of the contract;

3.) The alleged wrongdoer intended to induce the breach of the contract;

4.) The alleged wrongdoer acted maliciously;

5.) There was an actual breach of contract;

6.) The act complained of must be the proximate cause of the alleged breach of contract; and

7.) Damages resulted from the alleged breach of contract.

**Myers v. Pickering Firm, Inc.**, 959 S.W.2d 152, 158 (Tenn. App. 1997).

In the instant case, Dr. Bernard has the burden of proving the elements enunciated in **Myers**. Based upon our review of the record, we conclude the crux of this examination hinges on whether Sumner Regional intended to induce the breach of contract and whether they acted maliciously in doing so. In asking the court to reverse the trial court's grant of summary judgment in favor of Sumner Regional, Dr. Bernard asserts that summary judgment is never proper in cases where malice and intent to induce the contract are at issue.

Dr. Bernard complains Sumner Regional forwarded false and malicious charges of sexual harassment and inappropriate behavior to his employer, St. Thomas. As set forth in the affidavit of William Sugg, CEO of Sumner Regional, the information relayed to St. Thomas was the factual results surrounding the investigation and the complaints received against Dr. Bernard. Furthermore, Mr. Sugg's affidavit provides that the "information relayed to St. Thomas was accurate and truthful." Moreover, Mr. Sugg's affidavit provides that he did not ask St. Thomas to take any other action against Dr. Bernard other than removing him from Sumner Regional.

In reviewing the evidence in the light most favorable to Dr. Bernard, we find no evidence to support the alleged complaints that Sumner Regional intended to induce the breach of contract or acted with malice. Dr. Bernard has presented no evidence that this court can reasonably infer malice or inducement of the breach of contract. Dr. Bernard's conclusory statements

4

unsupported by any evidence cannot persuade this court to reverse the lower court's decision to grant summary judgment on the issue of procurement of breach of contract. As the Court in **Byrd** found, a disputed fact must be **"material"** before it can preclude summary judgment on an issue. **Byrd**, 847 S.W.2d at 215 (emphasis added). As a result, we conclude that there was no genuine issue of material fact as to whether Sumner Regional intended to induce the breach of contract or whether they acted maliciously.

IV.

Dr. Bernard's second action in accordance with his appeal charges Sumner Regional with defamation. In Tennessee, to establish a successful claim for defamation, three elements must be satisfied by the plaintiff: "(1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." **Sullivan v. Baptist Memorial Hospital**, 995 S.W.2d 569, 571 (Tenn. 1999); **See** Restatement (Second) of Torts § 580 B (1977). Truth is an absolute defense concerning a defamation claim. **Memphis Publishing Co. v. Nichols**, 569 S.W.2d 412, 420 (Tenn. 1978). Publication is the communication of statements to a third party regarding a defamatory matter. **Sullivan**, 995 S.W.2d at 572.

Recently, in **Tate v. Baptist Memorial Hospital**, 2000 Tenn. App. LEXIS 505 (Ct. App. 2000), this Court analyzed the affects of statements made to business associates in the scope of their employment as they relate to investigatory matters. In **Tate**, the plaintiff, a supply technician at Baptist Memorial Hospital, filed suit requesting damages for alleged defamation. **Id.** In the events leading to the initial suit, several payroll checks were reported missing and the matter was investigated by the hospital. **Id.** During the investigation, hospital security interviewed several people regarding this matter as well as Ms. Tate. **Id.** Following the investigation, Ms. Tate was accused of cashing checks that did not belong to her. **Id.** When approached regarding this matter, Ms. Tate maintained her innocence, however she was subsequently terminated for attempting to cash another employees paycheck. **Id.**

This Court in **Tate**, interpreting **Woods v. Helmi**, 758 S.W.2d 219 (Tenn. Ct. App. 1988), found that statements made to those who "had managerial, supervisory, or administrative responsibilities and oversight" concerning employees were "immediately interested in the information transmitted." In **Freeman v. Dayton Scale Co.**, 19 S.W.2d 255 (Tenn. 1929), the Court held that communication "made within the scope and course of employment relative to duties performed" is not enough to meet the standard of publication as set forth in **Sullivan**. **See Sullivan, supra**.

In the case at bar, Dr. Bernard argues he was defamed by communications to St. Thomas Hospital, resulting in the removal of Dr. Bernard's staff privileges from Sumner Regional. However, this Court is of the opinion that Dr. Bernard has failed to establish that the communications between Sumner Regional and St. Thomas were defamatory. The communications between Sumner Regional and St. Thomas pertained solely to the investigation conducted by Sumner Regional as it related to the numerous complaints lodged against Dr.

5

Bernard. The information transmitted to St. Thomas by Sumner Regional was the factual results of its investigation. Dr. Bernard's conclusory allegations that Sumner Regional "communicated false and defamatory statements concerning the plaintiff" to St. Thomas is not enough to establish a successful claim for defamation. Further, the Court in **Byrd** opined, "conclusory allegations are not sufficient to defeat a motion for summary judgment." 847 S.W.2d at 215. Other than his mere allegations, Dr. Bernard has failed to present to this Court any fact supporting a claim for defamation.

Moreover, should the communications be deemed defamatory, we believe Sumner Regional is entitled to summary judgment because its communications with St. Thomas qualify as a conditional privilege under the common interest privilege. Conditional privileges extend to all statements made "in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty; and the privilege embraces cases where the duty is not a legal one, but where it is of moral or social character of imperfect obligation." **Southern Ice Co. v. Black**, 136 Tenn. 391, 189 S.W. 861 (1916).

However, if the plaintiff can show that the defendant acted in bad faith or with actual malice, the conditional privilege will not apply. **Id.** The plaintiff has the burden of proving the defendant acted with actual malice. **Id.** In order to prove actual malice, there must be evidence showing that defendant contemplated serious doubts as to the truth of his statements and that the statements were made with reckless disregard for the truth. **Id.**

The record before the Court does not show Sumner Regional acting with reckless disregard for the truth, nor does it show them acting with actual malice as it relates to their communications with St. Thomas. Like Dr. Bernard's claim for procurement of the breach of contract, he cannot present to this Court any facts to support a claim that Sumner Regional acted with actual malice. The communications by Sumner Regional to St. Thomas were made in connection with Sumner Regional's investigation. Sumner Regional's sole motivation in asking St. Thomas to remove Dr. Bernard from Sumner Regional was to address the numerous complaints lodged against him by members of Sumner Regional's staff. Obviously, St. Thomas has an interest in the actions of Dr. Bernard because of their joint venture with Sumner Regional. Thus, the communications by Sumner Regional to St. Thomas regarding the removal of Dr. Bernard are privileged under the common interest privilege and are not actionable.

V.

Dr. Bernard's third action in accordance with his appeal charges that the trial court erred in failing to rule on his Motion to Compel and Motion to Quash before ruling on summary judgment. "The admissibility of evidence is a matter which rests within the sound discretion of the trial court. This Court will not interfere with the trial court's exercise of its discretion absent clear abuse." **Mahan v. Mahan**, 2000 Tenn. App. LEXIS 752 (Ct. App. 2000) (citing **Young v. Young**, 971 S.W.2d 386, 392 (Tenn. Ct. App. 1997)). Furthermore, the trial court has discretion when deciding upon what discovery restrictions might become necessary in specific case. **Duncan v. Duncan**, 789 S.W.2d 557, 560 (Tenn. App. 1990) (citing **Strickland v. Strickland**, 618 S.W.2d 496, 501 (Tenn. Ct. App. 1981)).

Here, the record indicates the trial court did not expressly rule on Dr. Bernard's Motion to Compel and Motion to Quash before granting summary judgment in favor of Sumner Regional. Court's have found no rule of law requiring courts to rule upon all outstanding motions before ruling on summary judgment. **Boatmen's Bank of Tennessee v. Dunlap**, 1997 Tenn. App. LEXIS 939 (Ct. App. 1997). Dr. Bernard's motion to compel was filed four days before the summary judgment motion. In the interest of expediency this Court cannot require all outstanding motions to be heard before summary judgment. If we took the position of Dr. Bernard, we would be encouraging attorneys to file motions in the eleventh hour to avoid hearing a motion for summary judgment. This might also create more continuances and merit-less motions. We are not ready to take that step. Under these circumstances, we can find no abuse of discretion by the trial court in hearing the summary judgment motion while outstanding motions existed.

VI.

Accordingly, for the reasons set out above, the order of the trial court granting summary judgment regarding Dr. Bernard's claims for procurement of breach of contract and defamation in favor of Sumner Regional is affirmed. Costs of this appeal are assessed against Dr. Bernard.

_____
DON R. ASH, SPECIAL JUDGE