**Shelley P. WILLIAMS, Plaintiff–Appellant,**

v.

**NISSAN MOTOR ACCEPTANCE CORP., Defendant–Appellee.**

No. 01–5415.

United States Court of Appeals, Sixth Circuit.

Aug. 28, 2002.

Before KENNEDY, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

Plaintiff Shelley P. Williams appeals pro se the district court's grant of summary judgment in favor of defendant Nissan Motor Acceptance Corporation ("NMAC") on her claims of defamation and willful and malicious misreporting of her credit history. The district court found that NMAC fairly and accurately reported the history of Williams's account and that there was an absence of evidence to support the facts of Williams's case. We affirm.

## I. Background

Williams bought a car financed by NMAC in September of 1996. In October, before the first payment was due, the car was wrecked and declared a total loss. In February 1997, due to an inability of plaintiff to agree on the appropriate contribution from Williams's insurer, NMAC executed a "paper foreclosure." NMAC did not physically take possession of the car, but instead acquired legal right to its value in order to negotiate directly with Williams's insurance company. The insurance company paid NMAC the fair market value for the car, which left a remaining balance owed by Williams. In April 1997, NMAC sent a letter to Williams advising her that she had an outstanding balance on her account of approximately $1600, and inviting her to contact their office to discuss payment options. Williams did not respond to that letter. NMAC sent another letter in May demanding payment and informing Williams that if she did not respond promptly, NMAC would file a negative credit report and refer the debt to a collection agency. After again receiving no response, NMAC referred the debt to Nationwide Credit. Nationwide sent a letter dated July 7, 1997, indicating that they would accept a settlement payment of $1200 in one lump sum. This offer would expire if Williams did not pay the full amount in 10 days, unless she made other arrangements with their office.

What happened at this point is disputed. Williams alleges that she made arrangements to pay $1200 in monthly installments of $300, to be paid through four backdated checks. These checks were cashed and their amounts applied to Williams's principal debt. NMAC insists that Nationwide Credit did not have authority to deviate from the precise terms offered in their letter—namely, payment in one lump sum—therefore the offer to settle for $1200 was rejected, and Williams owed the full amount of the remaining balance. NMAC contends that they ac-

cepted the four backdated checks as credit toward the full remaining balance, not as payment in full. Thus, according to NMAC's records, Williams was delinquent on a $1600 debt and had an outstanding balance of approximately $400. NMAC reported the foreclosure and the outstanding balance to the Trans Union Nation Consumer Relations Disclosure Center, a national credit reporting bureau.

## II. Analysis

Based on diversity of citizenship, plaintiff brought this action for defamation alleging substantial damage to her credit history and the inability to obtain a mortgage. The district court granted summary judgment to the defendant.

Summary judgment is appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). NMAC is entitled to summary judgment if it can show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In Tennessee, to establish a successful claim for defamation, a plaintiff must show that: "(1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Memorial Hosp.,* 995 S.W.2d 569, 571 (Tenn.1999). Truth is an absolute defense to a defamation charge. *See West v. Media Gen. Convergence Inc.,* 53 S.W.3d 640, 645 (Tenn.2001) (noting that "[i]n defamation law only statements that are false are actionable, truth is, almost universally, a defense."). Although Williams does point out some genuinely disputed issues of fact in the record, none of those facts are material to her cause of action. There is not sufficient evidence in the record for a fact finder to return a verdict for Williams.

### A. Repossession

■ Williams's first argument is that NMAC wilfully misreported her account as involving voluntary repossession, when in fact no actual repossession occurred. NMAC executed a "paper repossession" in order to exercise its right to negotiate directly with Williams's insurance company. NMAC has the right to do this under Tennessee law. *See* Tennessee Code Annotated § 47–9–101 (codifying Article 9 of the Uniform Commercial Code). NMAC provided Williams with a Notice of Intent to Dispose of Repossessed or Surrendered Motor Vehicle. That notice indicated that Williams had voluntarily surrendered her vehicle, and NMAC reported the vehicle as a voluntary repossession to the credit reporting agency.

NMAC repossessed the vehicle not because Williams was irresponsible, but because there was a dispute with the insurance company, and NMAC needed to repossess the vehicle in order to protect its rights as the lien holder. The credit reporting agency's simple designation of "voluntary repossession" does not convey the full set of facts surrounding Williams's dispute with NMAC. That, however, does not make NMAC's report untruthful or malicious, since NMAC did in fact legally repossess the vehicle.

### B. The Settlement Offer

■ Williams argues that she owes nothing because she entered into a valid settlement agreement pursuant to the July 7, 1997 letter from Nationwide Credit. She argues that although the terms in the letter specified payment in full within 10

days, she made other arrangements with the Nationwide Credit office to pay in four installments of $300 each. NMAC argues that Nationwide did not have the authority to make any arrangements other than those specifically stated in the letter, which indicated that payment should be made in one lump sum. In the deposition of Douglas L. Wrye, an NMAC employee, Wrye clearly states that Nationwide had no authority to accept installment payments as an alternative settlement arrangement. (Wrye Dep. at 39–41). Williams argues that even if Nationwide did not have actual authority, they had apparent authority since she had no way of knowing that Nationwide was not authorized to accept her settlement terms. However, Williams produces no evidence that Nationwide Credit accepted these terms as full settlement of the debt. Discovery of both Nationwide and NMAC's records regarding the Williams case revealed nothing that would indicate acceptance of those checks as payment in full. In fact, the record demonstrates that NMAC and Nationwide consistently treated those payments as partial payment on the full remaining balance. In the absence of any evidence demonstrating a genuine issue as to the existence of an agreement to accept the four backdated checks as payment in full, summary judgment is appropriate.

## C. The Amount of the Debt

█ Williams argues that NMAC wilfully misreported the amount of her debt. Specifically, Williams disputes certain interest charges and a repossession fee. NMAC backdated the insurance company's payment in order to make sure that Williams was not charged any interest that might have resulted from the delay in settlement with the insurance company. Williams interprets this as absolving her of all interest charges and late fees that accrued as a result of her failure to pay the remaining balance after the insurance company's settlement. This is an unreasonable interpretation. Wrye's testimony establishes only that NMAC did not intend to charge Williams for interest resulting from the delay in receiving payment from the insurance company. He says nothing about any other interest charges or late fees.

Williams also disputes a $450 repossession charge allegedly reported as part of her debt to NMAC. She states that she should not have been charged that fee since NMAC did not actually physically take repossession. Wrye stated in his deposition that Williams was not charged this fee since no physical repossession occurred. Williams has no evidence that the fee appears in the total debt amount reported to the credit agency.

Even if Williams does raise a genuine issue of fact regarding these charges, there is absolutely no evidence in the record to support her claim that NMAC intentionally misreported the amount of her debt to the credit reporting agency, or was negligent in ascertaining the actual amount of her debt. At best, the record indicates that these are active disputes with NMAC that should not be the subject of a defamation action.

## D. Truck or Car

█ Williams notes that NMAC misreported her account as involving a pickup truck instead of a car. There is no evidence in the record to show that this clerical error caused any injury.

## E. Forgery

█ Williams also claims that NMAC submitted a forged copy of the original contract to the district court. Williams's copy of her contract did not contain an

assignment provision, while the copy submitted to the court did contain such a provision. Williams claims that NMAC photocopied the contract to make it appear as if the assignment provision was part of the original contract. In his affidavit, Bill Bradbury, the general manager of the Nissan dealership from which Williams leased her car, stated that it is standard practice to exclude the assignment provision from the copy of the contract given to the buyer. However, the copy Williams signed did contain the assignment provision. Because this affidavit is uncontradicted, Williams has raised no genuine issue of material fact regarding her forgery claim.

The judgment of the district court is affirmed.