**John CLOYD, Appellant,**

v.

**PRESS, INC., et al., Appellees.**

Court of Appeals of Tennessee,
Eastern Section.

Dec. 4, 1981.

Lodge Evans, Elizabethton, for appellant.

Walter L. Price of Bryant, Price, Brandt & Fox, Richard W. Pectol, Johnson City, for appellees.

OPINION

PARROTT, Presiding Judge.

This action for libel, invasion of privacy, and conspiracy grows out of the publication in the Johnson City-Press Chronicle of two news articles [1] which state that the plaintiff, John Cloyd, violated the election laws by failing to file a financial report.

John Cloyd has appealed from the circuit judge's sustaining a motion for summary

1. See Addendum.

judgment for defendant, Carl A. Jones, publisher of the Johnson City-Press Chronicle, John A. Jones, editor of the Johnson City-Press Chronicle, and Lana Bowman, Registrar for the Washington County Election Commission, and directing a verdict after declaring a mistrial because the jury could not agree on a verdict as to the defendants, Press, Inc., owner of the Johnson City-Press Chronicle, Linda Sanders and Henry Samples, authors of the two articles.

In this appeal it is insisted that the circuit judge erred in sustaining the motion for summary judgment, erred in directing the verdicts, erred in instructing the jury that plaintiff was a public figure and that plaintiff must make out a case by clear and convincing proof.

■ Plaintiff, John Cloyd, has owned and operated a jewelry store in Jonesboro since 1945. He is a former constable and sheriff of Washington County. The controversy stems from John Cloyd's opposition to the Town of Jonesboro's proposal to purchase a parcel of real estate for industrial use known as Duncan Meadows. In his opposition to the purchase Mr. Cloyd prepared, circulated, and filed with the Recorder of the Town of Jonesboro petitions requiring a referendum to be held on the purchase of the property. Also he had purchased a series of advertisements in the Johnson City-Press Chronicle opposing the purchase and urging voters to vote "no" in the referendum. After the referendum overwhelmingly passed, writer Henry Samples went to the office of the Washington County Election Commission to obtain information about the financial statements filed in regard to the referendum. Samples was advised by Lana Bowman, the Registrar, that she had sent to John Cloyd and the Mayor of Jonesboro a letter requesting that they file financial statements of their expenditures during the election as required by statute. Mr. Samples testified that he attempted to locate Mr. Cloyd but could not find him. He then proceeded to write the attached article which was published on June 14.

The article written by Linda Sanders was published on June 22. Prior to publication of the Sanders article, she interviewed Registrar Lana Bowman and Lewis May, District Attorney General for Washington County. She also talked to John Cloyd about the article written by Henry Samples and told him of the information she had received from Lana Bowman and Attorney General May. She testified that Mr. Cloyd made no complaint to her about the article written by Mr. Samples nor did he advise her that the information she had obtained from Mrs. Bowman and Attorney General May was false or incorrect.

Mr. Cloyd testified that the articles upset him very much, damaged his reputation and influence, and caused him financial loss in his business. He further testified that he made five attempts to get the newspaper to straighten out the matter. He also had an attorney call the newspaper in regard to the articles. He admitted receiving the letter from Lana Bowman containing a form which Lana Bowman thought was required by the financial disclosure law to be filled out. He filled out the form and filed it with the registrar but later learned from his attorney and the district attorney that since he was not a political treasurer as defined by the statutes, it was not necessary for him to file the disclosure statement. Thus he withdrew the statement.

The first issue that must be determined is whether Mr. Cloyd is a "public figure." In *Wilson v. Scripps-Howard Broadcasting Co.*, 642 F.2d 371 (1981), the Sixth Circuit Court of Appeals in a case from Memphis, Tennessee, said:

> If plaintiff is a public figure, he "may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974). *Gertz* provides general guidelines to assist the media and the courts in determining whether an individual is a public figure: does a public controversy exist, and what

is the nature and extent of the individual's participation in that controversy. The nature and extent of the individual's participation is determined by looking to three factors: the extent to which participation in the controversy is voluntary, the extent to which there is access to channels of effective communication or order to counteract false statements, and the prominence of the role played in the public controversy.

In the instant case there is no question but a public controversy existed. Further, there is no question but the plaintiff injected himself into the public controversy and that his participation was extensive. Clearly in the instant case the plaintiff is a public figure.

*Wilson,* supra, further holds:

The language of *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and later cases makes clear that the burden of demonstrating the falsity of the defamatory statement rests on the plaintiff when the malice standard applies. See, e.g., *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964) (public official must establish that the utterance was false); *Rosenblatt v. Baer,* 383 U.S. 75, 84, 86 S.Ct. 669, 675, 15 L.Ed.2d 597 (1966) (same).

The same rule requiring the plaintiff to prove falsity is required under the First Amendment in libel cases based on negligence or some other standard of fault of lesser magnitude than malice. The Supreme Court in stating that "demonstration that an article was true would seem to preclude finding the publisher at fault," *Time, Inc. v. Firestone,* 424 U.S. 448, 458, 96 S.Ct. 958, 967, 47 L.Ed.2d 154 (1976), but suggested that falsity is an element of fault in defamation cases.

■ There is no evidence to support a finding that the defendants acted with any malice or entered into a conspiracy. Defendants could be negligent in their interpretation or construction of the law by thinking that Mr. Cloyd was required to file a financial disclosure statement. In *Press,*

*Inc. v. Verran,* 569 S.W.2d 435 (Tenn.1978), our Supreme Court said:

We are impressed with Standards 580A and 580B, Restatement (Second) of Torts (1977). They read as follows:

§ 580A. *Defamation of Public Official of Public Figure.* One who publishes a false and defamatory communication concerning a public official or public figure in regard to his conduct, fitness or role in that capacity is subject to liability, if, but only if, he

(a) knows that the statement is false and that it defames the other person, or

(b) acts in reckless disregard of these matters.

§ 580B. *Defamation of Private Person.* One who publishes a false and defamatory communication concerning a private person, or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness or role in his public capacity, is subject to liability, if, but only if, he

(a) knows that the statement is false and that it defames the other,

(b) acts in reckless disregard of these matters, or

(c) acts negligently in failing to ascertain them.

We believe that these standards meet the criteria of our federal and state constitutions and we adopt them as the law of this jurisdiction.

In adopting these standards, we look to the "profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open." We are guided by our belief that the news media have not only a right but a duty to make searching inquiry into all phases of official conduct and to realistically evaluate and assess the performance of duty by public officials.

Only under the most compelling circumstances should the courts place obstacles in the way of the news media, or muzzle or deter their investigative

efforts and reporting, even though the end result may be distasteful, despicable and shorn of all sense of fairness. The right of the news media to criticize official conduct is limited solely to their answerability *for actual malice, which means that the publication was made with knowledge of its falsity or with reckless disregard for the truth.* (Emphasis supplied.)

Applying the aforementioned law to the facts in the instant case, we conclude that the circuit judge was correct in directing the verdicts and granting the motions for summary judgment. There is not one iota of evidence as to any actual malice on the part of the defendants and, as a matter of law, the defendants are entitled to a directed verdict. It results the plaintiff has failed to carry the burden of proving libel or that these parties entered into a conspiracy.

The judgment below is affirmed with costs taxed to appellant.

GODDARD and FRANKS, JJ., concur.

ADDENDUM

# Jonesboro businessman seeks referendum probe

**By LINDA SANDERS**
P-C Jonesboro Bureau

A Jonesboro businessman has asked District Attorney General Lewis May to look into possible legal discrepancies by the town in preparation for next week's town referendum.

John Cloyd asked May to investigate several allegations in regard to the June 28 referendum on the purchase of Duncan's Meadow for $570,000.

May said that because of his talk with Cloyd, he will look into the law as to whether Mayor Jimmy Neil Smith has filed a complete financial report with the Election Commission, whether there is a conflict in that Smith is mayor and also chairman of a committee supporting the referendum, how much money the committee has received compared to what was reported in the financial report, and whether the Board of Mayor and Aldermen had the authority to use the town's postage machine for mailing information on the referendum.

Cloyd also questioned an advertisement by the town supporting the referendum, which appeared in the Jonesboro Herald and Tribune on June 20. Cloyd said the expenditure for the advertisement was not listed on the financial report.

According to Lana Bowman, register-at large, a state law requires citizens to file statements before they spend money for or against an election issue.

Election records determined that Cloyd has not complied with the state law by filing a statement.

Mrs. Bowman said yesterday that she is still of the opinion that if someone "is going to spend money on an issue, they must fill out the forms."

David Collins, coordinator of elections in Nashville, told Mrs. Bowman, she said, that she would not have been doing her job if she had not requested the forms be filled out by both the town and Cloyd.

The expenditure in question for Cloyd was the purchase of an advertisement in the *Johnson City Press-Chronicle* opposing the purchase of the meadow property.

Mrs. Bowman said the town had complied with the law and had filled out the forms.

Mrs. Bowman said the matter is now out of the local election commission's hands and the decision as to whether Cloyd is obligated to file the forms will come from Nashville.

Smith said, in connection with the advertisement in the Herald and Tribune, "We purchased the ad on June 18 and it was published on June 20. The disclosure report required that it include all expenditures made prior to June 16."

Smith's reaction to being mayor and also being involved in supporting the referendum was, "As mayor, I was very much involved in the creation of the Duncan's Meadow program. And now that the program is being questioned in the referendum, I feel obligated to aggressively support the board's program.

On publishing and distributing information on the purchase of the meadow at town expense, Smith said, "The Duncan's Meadow program was created by the Board of Mayor and Aldermen for the town. We felt obligated to inform the residents of Jonesboro of these plans before they had to vote on the issue, so we published and distributed the information at town expense."

"If they (the state election officials and the attorney general) feel we were in error in using town funds, then we will take every step to rectify the situation including repaying the town for the booklet's expense."

The meadow is a 9.5 acre tract to be sold to the town for $60,000 an acre.

The property is to be used for the construction of town facilities.

# *Election law violation found in Jonesboro*

By HENRY SAMPLES
P-C Staff Writer

All candidates in the May 8 Johnson City election have now complied with state law requiring them to file campaign disclosure statements

However, a check of elections records shows that Jonesboro businessman John Cloyd has not complied with state law requiring citizens to file statements before they spend money for or against an election issue

Cloyd opposes Jonesboro's plans to buy Duncan Meadows and convert it into a multi purpose facility, and was instrumental in having a referendum called on the issue

He has purchased, according to records at the Johnson City Press-Chronicle, a political advertisement opposing the purchase plans, without filing proper papers with the election commission

State election law says advocates and opponents of election issues must file proper papers before spending any money for or against an issue

Lana Bowman, registrar at large, said in response to a question that she had mailed copies of the pertinent state law and proper forms to Cloyd and to Jonesboro Mayor Jimmy Neil Smith

Violation of the state election law carries a maximum fine of $5,000

Earlier this week this newspaper reported that Robert DeVane and Robert Susong, commission candidates in the May 8 election, had not filed a campaign disclosure statement required by law after the election

The newspaper also reported that William Moorhouse, a candidate for the Johnson City Board of Education, had not filed either of the two statements required by law

However, a check yesterday with the Washington County Election Commission showed that Moorhouse, DeVane and Susong had filed after the newspaper article appeared earlier this week. All three filed after the June 7 deadline for filing

DeVane's first statement showed he had raised $593.17 for his campaign, of which $168.17 was personal funds. He listed expenses of $468.17. His second campaign statement said he had spent an additional $125

Susong's first statement said he had spent $3.17 in personal funds. His second statement said he had spent an additional $115

Moorhouse, who filed yesterday, said he had spent $365 in personal funds. He listed $320 in political advertising with the Johnson City Press-Chronicle