IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 17, 2022 Session

**BILL CHARLES v. DONNA MCQUEEN**

**Appeal from the Chancery Court for Williamson County**
**No. 21CV-50119     Michael Binkley, Judge**

_____

**No. M2021-00878-COA-R3-CV**

_____

This case involves a lawsuit alleging claims of defamation and false light arising from an online review.  In response to the lawsuit, the defendant filed a petition under the Tennessee Public Participation Act to dismiss the lawsuit.  The trial court ultimately granted the petition and dismissed the case.  For the reasons stated herein, we affirm in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Eric W. Smith and Paul J. Krog, Brentwood, Tennessee, for the appellant, Bill Charles.

Ronald G. Harris, William T. Ramsey, and William J. Harbison, II, Nashville, Tennessee, for the appellee, Donna McQueen.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

Bill Charles ("Plaintiff") is a real estate professional who, as part of his career, offers assistance to real estate development projects.  One of Plaintiff's clients, Freehold Communities, is the developer of Durham Farms, a large residential community in Hendersonville, Tennessee.  Donna McQueen ("Defendant") is a resident of the Durham Farms community.

The dispute in this matter arose from a now-deleted online review Defendant posted regarding Freehold Communities, which also mentioned Plaintiff.  Defendant's review was

as follows:

> Buyer Beware! Freehold Communities is nothing but bait and switch. I have lived here three years with multiple changes to our development which is supposed to be all about community and connectedness. Bill Charles, especially, uses misleading tactics to lure in home buyers only to deceive them. A rental section within our community is not what any of us signed up for. Zero star rating for Freehold.

This review was posted in September of 2020. On January 27, 2021, Plaintiff filed a "Complaint" against Defendant in the Chancery Court of Williamson County, Tennessee. In his complaint, Plaintiff alleged claims of defamation and false light against Defendant and requested compensatory damages in excess of $100,000.00 and punitive damages in excess of $200,000.00. On March 4, 2021, Defendant filed her "Petition to Dismiss Plaintiff's Complaint Under the Tennessee Public Participation Act." In her petition, Defendant set forth two separate reasons as to why Plaintiff's suit against her should be dismissed: (1) Defendant's review was not defamatory as a matter of law because it was either constitutionally protected speech or "permissible hyperbole" and (2) Plaintiff cannot prove that the review was posted with "actual malice."

The matter was heard by the trial court on May 13, 2021, after which a "Memorandum and Order" was entered on July 6, 2021. In its order, the trial court first addressed whether Defendant had met her burden in demonstrating that Plaintiff's legal action against her was "based on, relate[d] to, or [was] in response to that party's exercise of the right to free speech, right to petition, or right of association." Ultimately, the trial court determined that Defendant met her burden in showing that this litigation was indeed in response to her exercise of free speech. In so doing, the trial court determined that, pursuant to the Tennessee Public Participation Act ("TPPA"), her statements constituted a "matter of public concern" in that they pertained to a "good" in the marketplace. Accordingly, the burden then shifted to Plaintiff to show a prima facie case for each essential element of both his defamation and false light claims.

Concerning Plaintiff's defamation claim, the standard to which Plaintiff was to be held depended upon his status. If Plaintiff was to be considered a private citizen, the negligence standard would apply; however, if it was determined that the allegedly defamatory statement involved a public controversy and Plaintiff was either a public official or a public figure, the actual malice standard would apply. *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 296 (Tenn. Ct. App. 2007), *abrogated on other grounds by Burke v. Sparta Newspapers, Inc.*, 592 S.W.3d 116 (Tenn. 2019); *see also Hibdon v. Grabowski*, 195 S.W.3d 48, 58 (Tenn. Ct. App. 2005) (providing that the actual malice standard does not apply unless it is determined that the party alleging defamation is a public figure). The trial court determined that because Plaintiff "intentionally and voluntarily engaged with both the public and the media concerning the development of Durham

- 2 -

Farms," he was a "limited-purpose public figure" in the context of this matter. Specifically, it noted that "in consideration of the totality of the circumstances surrounding this dispute, the Court finds [Plaintiff] has voluntarily placed himself into a position of prominence with respect to the limited issue of the development of Durham Farms." As such, Plaintiff was then charged with establishing a prima facie case that Defendant's statement was defamatory and, according to the trial court, made "with the knowledge that the statement was false and defaming to [Plaintiff], or with reckless disregard for the truth or falsity of the statement." In its analysis, the trial court determined that Defendant did, in fact, publish a defamatory statement. However, upon determining that Plaintiff had not established a prima facie case of the actual malice element, the trial court concluded that Plaintiff failed to establish a prima facie case of defamation.

Regarding Plaintiff's false light claim, the trial court noted that the actual malice standard would be applicable to false light claims involving public figures or a matter of public concern. *See West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 648 (Tenn. 2001). As Plaintiff was previously determined to be a limited-purpose public figure, the trial court applied the actual malice standard. Accordingly, Plaintiff had the burden of establishing a prima facie case for false light in showing that Defendant gave publicity to him, that the publicity placed him in a false light, that the false light was highly offensive to a reasonable person, and that Defendant acted with actual malice. The trial court ultimately determined that Plaintiff met his burden in showing the publicity, that Defendant's statement had placed him in a false light, and that this light would be highly offensive to a reasonable person. However, the trial court determined that Plaintiff had not established a prima facie case for actual malice and, therefore, did not establish a prima facie case for false light.

Accordingly, the trial court dismissed Plaintiff's case. This appeal followed.

## ISSUES PRESENTED[1]

Plaintiff raises several different issues for our review on appeal, which we have restated and condensed as follows:

1. Whether the trial court erred in determining that Plaintiff was a limited-purpose public figure.
2. Whether the trial court erred in considering certain evidence in its disposition.

---

[1] In her brief on appeal, Defendant requests that, in the event of an affirmation of the trial court, this Court remand for a determination of the proper amount of reasonable attorneys' fees incurred in this appeal. However, Defendant failed to expressly raise this as an issue in her brief. Defendant's failure to properly identify this issue is in direct noncompliance with Rule 27(a)(4) of the Tennessee Rules of Appellate Procedure. Accordingly, we conclude that Defendant has waived this claim on appeal. *See Bean v. Bean*, 40 S.W.3d 52, 54-55 (Tenn. Ct. App. 2000).

3. Whether the trial court erred in finding that Plaintiff had failed to establish that Defendant acted with actual malice in making her statements.
4. Whether the trial court erred in applying the Tennessee Public Participation Act to the case on the premise that real estate constitutes a "good" within the meaning of the Act.

## DISCUSSION

The TPPA was designed to "encourage and safeguard the constitutional rights of persons to petition, to speak freely, to associate freely, and to participate in government to the fullest extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury." Tenn. Code Ann. § 20-17-102. Also known as Tennessee's version of an anti-SLAPP[2] statute, the TPPA is designed to "discourage[] and sanction[] frivolous lawsuits and permits the early disposition of those cases before parties are forced to incur substantial litigation expenses." Todd Hambridge et al., *Speak Up.*, 55 Tenn. B.J. 14, 15 (2019).

"The TPPA provides relief for parties who partake in protected activity constituting either the exercise of the right of association, the exercise of the right of free speech, or the exercise of the right to petition." *Doe v. Roe*, 638 S.W.3d 614, 618 (Tenn. Ct. App. 2021) (citing Tenn. Code Ann. §§ 20-17-104(a), 20-17-105). If a petitioning party under the TPPA "makes a prima facie case that they have participated in protected activity under the TPPA, the court may then dismiss the action against them, 'unless the responding party establishes a prima facie case for **each essential element** of the claim in the legal action.'" *Id.* (emphasis added) (quoting Tenn. Code Ann. § 20-17-105(a),(b)).

### *Whether the Trial Court Erred in Applying the TPPA*

Although Plaintiff sets forth numerous arguments as to the impropriety of the trial court's ruling, we elect to first address Plaintiff's contention that the trial court erred in finding that the TPPA was applicable to the present case. Specifically, Plaintiff maintains that the trial court incorrectly determined that Defendant's statements constituted a "matter of public concern" by reasoning that they pertained to a "good" in the marketplace. *See* Tenn. Code Ann. § 20-17-103.

As previously noted, the TPPA is designed to protect a party's actions provided that they have participated in protected activity under the statute. Specifically, the TPPA provides protection for individuals who, among other things, partake in the exercise of the right of free speech. Tenn. Code Ann. § 20-17-104(a). As statutorily defined by the TPPA, an "exercise of the right of free speech" means "a communication made in connection with

---

[2] "SLAPP" serves as an acronym for "strategic lawsuit against public participation." Todd Hambridge et al., *Speak Up.*, 55 Tenn. B.J. 14, 15 (2019).

- 4 -

a **matter of public concern** that falls within the protection of the United States Constitution or the Tennessee Constitution." Tenn. Code Ann. § 20-17-103(3) (emphasis added). The TPPA goes on to provide that a "matter of public concern" includes issues pertaining to: "(A) Health or safety; (B) Environmental, economic, or community well-being; (C) The government; (D) A public official or public figure; (E) A good, product, or service in the marketplace; (F) A literary, musical, artistic, political, theatrical, or audiovisual work; or (G) Any other matter deemed by a court to involve a matter of public concern." Tenn. Code Ann. § 20-17-103(6). In her petition, Defendant maintained that her statements at issue pertained to community well-being and goods, products, or services in the marketplace. Ultimately, in its order, the trial court determined that her statements "contemplate[d] issues related to the sale of homes by Freehold Communities," which it found to fall within the statutory definition of a "matter of public concern" as a statement relating "to the sale of goods in the marketplace."

Regardless of the propriety of the trial court's specific finding that Defendant's statements related to the sale of a "good" in the marketplace, we disagree with Plaintiff's argument that the trial court erred in finding that the TPPA was applicable to the present case. Specifically, we agree with Defendant that her statements pertain to "community well-being" under the statute. In making this determination, we take largely the same approach this Court took in *Doe v. Roe*, 638 S.W.3d 614 (Tenn. Ct. App. 2021), wherein we were tasked with interpreting certain statutory terms coming under the purview of a "matter of public concern." In that case, we stated as follows:

> In interpreting a statute, "[w]hen the language within the four corners of the statute is unambiguous, the legislative intent must be derived from the statute's face." Thus, we shall apply the "natural and ordinary meaning" to the language of a statute, unless there exists ambiguity requiring further clarification. Because certain words used to define a "matter of public concern" are not expressly defined themselves, we "look to [their] usual and accepted meaning from sources of common usage."

*Id.* at 619-20 (internal citations omitted). Similarly here, we will again apply the "natural and ordinary meaning" to language contained in the TPPA. Specifically, we are concerned with the meaning of "community well-being" as it pertains to a "matter of public concern." Although "community well-being" itself is not expressly defined, Black's Law Dictionary defines "community" as: (1) "A neighborhood, vicinity, or locality" and (2) "A society or group of people with similar rights or interests." Black's Law Dictionary 338 (10th ed. 2014). Moreover, although Tennessee does not appear to have any guiding case law concerning this interpretation as it relates to the TPPA, we again, as we did in *Doe*, look to other courts for guidance, including those that have interpreted near identical provisions concerning their states' anti-SLAPP statutes. Primarily, we note that several Texas courts have taken the position that neighborhoods, including those with a homeowner's association ("HOA"), are considered to be communities implicated in the notion of

- 5 -

"community well-being." For example, in the case of *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890 (Tex. 2018), a real estate developer brought a defamation action against a homeowner and his wife, alleging business disparagement and defamation. *Id.* at 892-94. Specifically at issue were certain purported defamatory statements made by the defendant in a blog concerning the plaintiff's alleged prior criminal history and complaints about the plaintiff's work in the defendant's neighborhood. *Id.* at 893. The defendant filed a petition under Texas's version of an anti-SLAPP law. *Id.* at 893-94. On appeal, the Texas Supreme Court determined that the defendant's communications were a "matter of public concern" as they pertained to the "community well-being." *Id.* at 896. Specifically, it found that "in the context of a small residential community like Normandy Estates, any allegation of malfeasance and criminality by the developer and the HOA likely concerns the well-being of the community as a whole. HOAs wield substantial, quasi-governmental powers in many neighborhoods." *Id.* A California Court of Appeals panel dealt with a similar issue in *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468 (Cal. Ct. App. 2000), where a former HOA manager brought a defamation action against certain HOA members who had authored articles that were critical of his performance as a manager, the publisher of a community newsletter in which the articles appeared, and members of the HOA's board of directors who had previously been critical of his performance at board meetings. *Id.* at 471. The defendants filed a motion to strike the complaint under California's anti-SLAPP statute. *Id.* In affirming the trial court's decision to grant the defendants' motion, the California Court of Appeals determined that the communications and statements at issue concerned issues of public interest. *Id.* at 478. Specifically, it noted that "public interest" had been broadly construed to include "private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." *Id.* In light of this, it concluded that the defendants' statements "pertained to issues of public interest within the Ocean Hills community" and that, specifically, these statements "concerned the very manner in which this group of more than 3,000 individuals would be governed – an inherently political question of vital importance to each individual and to the community as a whole." *Id.* at 479. Ultimately, "[a]lthough the allegedly defamatory statements were made in connection with the management of a private homeowners association, they concerned issues of critical importance to a large segment of our local population." *Id.* Accordingly, it appears that neighborhoods are often considered to constitute communities and implicate matters of "public interest" or "public concern" in the context of anti-SLAPP litigation.

In light of the foregoing case law concerning the notion of "community well-being," as well as the Black's Law Dictionary definition of "community," we conclude that Defendant's statements concern an issue that is related to "community well-being" as contemplated by our statutory framework. Defendant's statements clearly implicate certain concerns and ongoing conditions and issues occurring in the community and, regardless of the trial court's finding concerning a "good" in the marketplace, we conclude that it did not err in applying the TPPA to the present case.

*Whether the Trial Court Erred in Considering Certain Evidence*

We next address Plaintiff's evidentiary objections concerning certain exhibits considered and relied upon by the trial court when granting Defendant relief. Plaintiff maintains that the trial court's consideration of these exhibits violated the Tennessee Rules of Evidence. Plaintiff's objections are of particular significance as they relate to the determination of whether or not he should be considered a limited-purpose public figure within the meaning of defamation law insofar as the trial court relied upon the complained-of exhibits in reference to that question.

"When considering a petition filed under the TPPA, the court may consider 'supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based and on other admissible evidence presented by the parties.'" *Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651, 660 (Tenn. Ct. App. 2021) (quoting Tenn. Code Ann. § 20-17-105(d)). "Issues regarding admission of evidence . . . are reviewed under an abuse of discretion standard." *Watson v. Watson*, 196 S.W.3d 695, 702 (Tenn. Ct. App. 2005) (citing *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001)). Under this standard, we will uphold a trial court's ruling "so long as reasonable minds can disagree as to [the] propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Id.* (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). The abuse of discretion standard does not allow this Court to "substitute its judgment for that of the trial court." *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)).

Broadly speaking, Plaintiff's evidentiary arguments are two-fold. First, he maintains that the trial court improperly admitted exhibits in violation of Rule 901 of the Tennessee Rules of Evidence. Rule 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901. Second, Plaintiff maintains that certain exhibits were admitted despite being impermissible hearsay pursuant to Rule 803 of the Tennessee Rules of Evidence. As to both of these contentions, Plaintiff cites to numerous exhibits in his brief; however, in the interest of efficiency, we will address the propriety only of the exhibits actually relied upon by the trial court in its order granting the Defendant relief.

Exhibits 2 & 4

Exhibit 2 consists of a purported copy of Durham Farms' bylaws, and Exhibit 4 is a purported copy of a 2019 Tennessee Corporation Annual Report Form. In its memorandum and order, the trial court relied on these documents to find that Plaintiff was

indeed both the registered agent and president of Durham Farms' HOA. As it pertains to Exhibit 4, which Plaintiff argues *could* be self-authenticating, Plaintiff notes that the particular copy filed by Defendant was not certified in accordance with Rule 902(4) of the Tennessee Rules of Evidence. Plaintiff also notes that there was no testimony as to its authenticity. As such, Plaintiff argues that this exhibit is inadmissible under the Rules of Evidence. Plaintiff makes a similar argument as to Exhibit 2—that it was inadmissible due to lack of authentication. Plaintiff also offers an argument that Exhibit 2 contains inadmissible hearsay.

Upon reviewing each of these exhibits, we agree with Plaintiff's contentions in that neither of these exhibits were properly authenticated pursuant to the Rules of Evidence. Specifically, we note the lack of testimony from an appropriate party who could testify that these exhibits are what they purport to be. Moreover, we find no support for the notion that either of these documents are self-authenticating, nor does Defendant proffer a substantive argument for such a contention. Nevertheless, although we conclude that these exhibits were not properly authenticated and thus, inadmissible, we note that Plaintiff's declaration submitted to the trial court admits the same set of particular facts for which the trial court was relying on these exhibits. In light of this, any error by the trial court in considering these exhibits is rendered harmless and of no ultimate consequence, as the information relied upon by the trial court through these exhibits was established through separate evidence tendered by Plaintiff himself.[3]

## Exhibits 6 and 10

Exhibit 6 is a *Tennessean* article dated July 28, 2014, and Exhibit 10 consists of a *Tennessean* article dated July 15, 2020. The trial court relied on these exhibits to support its finding that Plaintiff "commented on the master plan for Durham Farms to a regional-daily newspaper for an article." Plaintiff argues that these newspaper articles contain inadmissible hearsay and were improperly considered. As will be explained in further detail below, we agree with Plaintiff's contentions as to these exhibits.

It is a well-settled principle that newspaper articles are not admissible evidence under the hearsay rule. *See State v. Henretta*, 325 S.W.3d 112, 144 (Tenn. 2010); *see also State v. Martin*, No. 0201-9512-CC-00389, 1997 WL 471158, at *6 (Tenn. Crim. App. Aug. 18, 1997) ("[T]he content of newspaper articles is hearsay that does not fall within an exception to the hearsay rule."). Defendant's position here, however, is that the trial court was not relying on the newspaper articles for hearsay purposes, i.e., the truth of the matter asserted, but rather, for the simple proposition that Plaintiff did in fact speak to the media

---

[3] This absence of any ultimate harm is true with respect to any arguable hearsay concern about Exhibit 2 as well, given, as we noted, that Plaintiff attested to the same information for which the trial court had relied upon Exhibit 2.

about the development of Durham Farms, as noted by the trial court in its order.[4]  We disagree with Defendant's position that the trial court's reliance on these articles for such purposes does not implicate hearsay.  Further, as discussed below, we disagree with Defendant that the articles at issue are admissible because they contain purported statements that are attributable to Plaintiff.

In determining the propriety of the trial court's consideration of these articles, we review Rule 805, which provides that "[h]earsay within hearsay is not excluded under the hearsay rule **if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules or otherwise by law**." Tenn. R. Evid. 805 (emphasis added).  We note that newspapers may typically indicate two layers of hearsay, one being the statements of the individual being interviewed by the newspaper, with the second being that of the newspaper article itself—i.e., the statements of its author. *See generally Larez v. City of Los Angeles*, 946 F.2d 630, 642-44 (9th Cir. 1991) (discussing the applicability of hearsay rules to a newspaper article).  Accordingly, even if we were to assume that Plaintiff's statements in either of the articles were not being offered for the truth of the matter asserted, and thus not hearsay, or that they constituted an exception to hearsay as an admission by a party-opponent pursuant to Rule 803(1.2) of the Tennessee Rules of Evidence, as argued by Defendant in her brief, these assumptions do not address the second level of hearsay present—the newspaper articles themselves.  We find no hearsay exception for a newspaper article in the Rules of Evidence, nor does Defendant cite to one in her appellate argument.  Indeed, as noted earlier, "the content of newspaper articles is hearsay that does not fall within an exception to the hearsay rule." *Martin*, 1997 WL 471158, at *6. As aptly stated by Plaintiff in his brief, the newspaper articles at issue here were essentially "written by an absent witness, and the statements [contained therein] reflect the author's out-of-court account."  Accordingly, we conclude that the newspaper articles on their own constituted hearsay, and we find no exception available to support their admission or consideration in reference to the content therein.  Thus, we conclude the trial court committed error in relying on these exhibits to support its finding that Plaintiff "commented on the master plan for Durham Farms to a regional-daily newspaper for an article."

<u>Exhibits 7, 8, and 11</u>

Exhibits 7, 8, and 11 all consist of purported copies of meeting minutes from various commission meetings and homeowners' association meetings.  Based on the trial court's order, it appears it relied on these exhibits for the proposition that Plaintiff had publicly spoken about the development of Durham Farms at these meetings.  Plaintiff argues that these exhibits are inadmissible due to a lack of authentication.  Defendant, on the other hand, maintains that the copies of these minutes are authenticated under Rules 901(7) and

---

[4] Defendant also set forth an argument that the trial court relied on the newspaper articles to show that Defendant had access to the media.  However, we find this argument to be without merit for the same reasons set out in this section.

902(5) of the Tennessee Rules of Evidence. Respectfully, we find Defendant's argument in this regard to be a misinterpretation of the Rules of Evidence.

Rule 901 stands for the proposition that the evidence authentication requirement is "satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901. Specifically, as it relates to public records or reports, the rule provides that authentication or identification may be established by "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office (or a purported public record, report, statement, or data compilation in any form) is from the public office where items of this nature are kept." Tenn. R. Evid. 901(7). Rule 902, on the other hand, involves self-authenticating documents. Of particular concern to Defendant's argument pertaining to some exhibits is Rule 902(5), which provides that "[b]ooks, pamphlets, or other publications purporting to be issued by public authority" are self-authenticating and do not require extrinsic evidence of authenticity. Tenn. R. Evid. 902(5). Insofar as it pertains to Exhibit 8, the HOA meeting minutes, we are of the opinion that there is no basis upon which to conclude the document is authentic. First, we find no evidence to support the notion that Exhibit 8 is self-authenticating. Specifically, we find no support in the rule, nor has Defendant cited to any case law or other supporting material, providing that HOA meeting minutes are "publications purporting to be issued by public authority" within the meaning of Rule 902(5). Tenn. R. Evid. 902(5). Indeed, independent of other potential issues, we note that the HOA at issue here is a private entity. Moreover, there does not appear to have been any attempt to authenticate the document, a problem that plagues Defendant's exhibits generally, as discussed *infra*.

As it pertains to the purported meeting minutes of the Hendersonville Regional Planning Commission, Exhibits 7 and 11, we also find that these are neither authenticated under Rule 901(7), nor are they self-authenticating under Rule 902(5). First, although Defendant invokes Rule 901(7) in support of her contention that these exhibits were authenticated, her argument is conclusory and generically predicated upon the notion that these exhibits are purportedly public records. The problem with her argument, specifically as it relates to her reliance on Rule 901(7), is that her position is not supported by any evidence as required for that rule. Indeed, the record before us provides, as it concerns these exhibits, no "**[e]vidence** that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office . . . is from the public office where items of this nature are kept." Tenn. R. Evid. 901(7) (emphasis added). Because Defendant has proffered no evidence as required by Rule 901(7), we find her claim that Exhibits 7 and 11 are authenticated pursuant to this Rule to be without merit. As alluded to earlier, we will more broadly discuss Defendant's general failure to authenticate documents *infra*.

We also conclude that neither Exhibit 7 nor Exhibit 11 are self-authenticating pursuant to Rule 902(5). As noted previously, Rule 902(5) concerns documents that are "official publications," which includes "[b]ooks, pamphlets, or other publications

- 10 -

purporting to be issued by public authority." Tenn. R. Evid. 902(5). We find no indication here that these meeting minutes from the Hendersonville Regional Planning Commission in Exhibits 7 and 11 constitute books or pamphlets within the meaning of the rule, nor has Defendant proffered any argument to this effect. However, the question as to whether these meeting minutes constitute "other publications purporting to be issued by public authority" requires further analysis. There is no question that the Hendersonville Regional Planning Commission, as part of a city government, constitutes a form of "public authority." Whether minutes such as these constitute a "publication" is potentially a more complex issue, although ultimately not on the record in this case, as discussed below.

These exhibits do not indicate on their face that the minutes were published in the traditional sense; they merely reflect a purported memorialization of certain governmental affairs but without any accompanying indicia that this memorialization was actually produced in copies for distribution. Such a concern is not without consequence, given, again, that Rule 902(5) deals with "publications." As one commentator has discussed when engaging with Federal Rule of Evidence 902(5), which is nearly identical[5] to Tennessee Rule of Evidence 902(5),

> [t]he scope of Rule 902(5) broadly extends to books, pamphlets, and all other publications purporting to be issued by a public authority. While the provision does not define "publication," there is no reason to assume that the drafters had anything other than the commonly employed meaning in mind: a writing produced in multiple copies for distribution to persons beyond those involved in the creation of the writing. Thus, official publications may be distinguished from the subjects covered by the preceding subdivisions of Rule 902, public records and public documents, in that these items usually are prepared not for distribution but, instead, for filing or recording in a public office.

31 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 7139 (2d ed.) (internal footnote omitted). Although the documents themselves do not contain any indicia that they were copied and prepared for a distribution in the same way that a given governmental study or manual likely would, *see id.* (noting that Federal Rule of Evidence 902(5) has been applied to, among other items, governmental studies and manuals), we are not oblivious to the role that the internet now plays in all areas of life. In this vein, we acknowledge that existing case law on the federal analog to Rule 902(5) often extends the notion of a "publication" to the posting of certain documents on government websites. *See, e.g.*, *Rote v. Zel Custom Mfg., LLC*, 383 F. Supp.3d 779, 785 (S.D. Ohio 2019) ("Official publications electronically from a government website should be accepted by the court as self-authenticating."). *But see Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d

---

[5] Federal Rule of Evidence 902(5) provides for self-authentication of "[a] book, pamphlet, or other publication purporting to be issued by a public authority." Fed. R. Evid. 902(5).

1244, 1249-50 (10th Cir. 2013) (providing that a website of a foreign bank, established under foreign laws and majority-owned by a foreign government, could not be self-authenticating under Rule 902(5) since the website was not a "book, pamphlet, or other publication purporting to be issued by a public authority," and the website did not have a "sufficient indicia of reliability" to justify self-authentication). Although an argument could therefore be made that Exhibits 7 and 11 should be considered publications if posted by the government on its website and thus self-authenticating pursuant to Rule 902(5), this factual predicate is not implicated on the record before us. Indeed, the record lacks any indication making such a connection, or that the minutes were published in any sense. Accordingly, we do not find Exhibits 7 and 11 to be self-authenticating under Rule 902(5).[6]

In addition to the above analysis concerning authentication, we find our conclusion regarding the authenticity, or lack thereof, of Defendant's exhibits to be further bolstered by certain statements made by Defendant's counsel, as well as by the trial court in its order. First, we note that, at the hearing on Defendant's TPPA petition, her counsel made the following statement to the court:

> [T]his is a preliminary petition. It's a preliminary motion. I don't think there really would be any question that, would the case proceed, that these would all be authenticated and admitted later. We haven't had the benefit of discovery, so that's part of the reason why there's not been any attempt to authenticate most of them.

As an initial matter, in light of the foregoing statement, we again note that the TPPA clearly provides that, in consideration of a TPPA petition, the trial court is to rely upon "admissible" evidence. *See* Tenn. Code Ann. § 20-17-105(d) ("When considering a petition filed under the TPPA, the court may consider 'supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based and on other admissible evidence presented by the parties.'"). Thus, the statements made to the trial court above clearly contravene the plain requirements set forth by the TPPA, and the assertion that the exhibits would be "authenticated and admitted later" is misguided in the context of the relevant statutory framework. Moreover, it is clear from the statement that these exhibits "would all be authenticated and admitted later" that, at that point in time, per counsel's own admission, the exhibits were in fact *not* authenticated. Such conclusion is further supported by the trial court's order wherein, in a footnote, it notes that "at this stage of the proceedings, the parties have not had the benefit of discovery in order to authenticate these documents.[7] This Court will determine what weight, if any, it is appropriate to

---

[6] No argument has been offered that the exhibits are self-authenticating under Tennessee Rule of Evidence 902(4), which applies to certified copies of public records. In any event, we note that these exhibits contain no certification by a custodian or other authorized person within the meaning of Rule 902(4).

[7] Discovery is not prohibited if needed for a purpose relevant to the proceedings under the statutory scheme. *See* Tenn. Code Ann. § 20-17-104(d) (noting that although discovery is generally stayed, "[t]he

afford each of [Defendant's] **unauthenticated exhibits** at this stage." (emphasis added).

Strictly speaking, therefore, the terms of the court's order do not appear to regard the complained-of exhibits as definitively authenticated; however, the trial court apparently believed this to be of no consequence, notwithstanding the direction under the TPPA that "admissible evidence" be considered. *See* Tenn. Code Ann. § 20-17-105(d). In light of the plain language of the statute at issue here, we find the trial court's approach to be in error and in contravention of the requirements of the TPPA. *See* Tenn. Code Ann. § 20-17-105(d) ("The court may base its decision on supporting and opposing sworn affidavits stating admissible evidence upon which the liability or defense is based and on other admissible evidence presented by the parties.").

### The Impact of the Above-Discussed Evidentiary Errors

In the above discussion, we have noted our agreement with Plaintiff that many of the exhibits relied upon by the trial court were not admissible and that the trial court therefore erred in considering them when making a disposition on Defendant's petition. As such, when analyzing the propriety of the trial court's determination that Plaintiff is a limited-purpose public figure, we will omit consideration of those particular exhibits. The determination of whether Plaintiff is a limited-purpose public figure is significant to the question of what standard governs his case, as noted previously. *See Hibdon*, 195 S.W.3d at 58.

In determining whether Plaintiff may be considered a limited-purpose public figure, pursuant to our case law, the trial court must determine that there was in fact a public controversy and that Plaintiff injected himself into the controversy by his own voluntary action. *See Trigg v. The Elk Valley Times*, 720 S.W.2d 69, 72 (Tenn. Ct. App. 1986) ("[A]n individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.") (quoting *Gertz*, 418 U.S. at 351); *see also* Dobbs, *The Law of Torts*, § 418, at 1175 (2001). In determining whether Plaintiff voluntarily injected himself into a pre-existing controversy, courts look at "the nature and extent of the individual's participation in that controversy." *Hibdon*, 195 S.W.3d at 59 (quoting *Cloyd v. Press, Inc.*, 629 S.W.2d 24, 25-26 (Tenn. Ct. App. 1981)). In analyzing an individual's participation, there are multiple factors that may be relied upon, including "the extent to which the participation in the controversy is voluntary, the extent to which there is access to channels of effective communication [in] order to counteract false statements, and the prominence of the role played in the public controversy." *Id.* In reference to these concerns, the trial court made various findings in its order relying upon the aforementioned exhibits. Of particular relevance to our review, the trial court relied upon Exhibits 6, 7, 8, 10, and 11 for its finding that Plaintiff

---

court may allow specified and limited discovery relevant to the petition upon a showing of good cause").

commented on the master plan for Durham Farms to a regional-daily newspaper for an article published July 28, 2014; spoke about the development of Durham Farms at a June 2, 2015 meeting of the Hendersonville Regional Planning Commission; spoke about the development of Durham Farms at an April 3, 2016 meeting of the Drakes Pointe homeowners' association; spoke about the development of Durham Farms at an April 2, 2019 meeting of the Hendersonville Regional Planning Commission; and commented on the development of Durham Farms to a regional-daily newspaper for an article published July 15, 2020.

In light of these findings, the trial court determined that Plaintiff "intentionally and voluntarily engaged with both the public and the media concerning the development of Durham Farms," and thus, the trial court concluded that "[Plaintiff] is in fact a limited-purpose public figure in the context of this dispute." Moreover, the trial court also determined that Plaintiff "voluntarily placed himself into a position of prominence with respect to the limited issue of the development of Durham Farms."[8]

However, as we have made clear earlier in this Opinion, the exhibits upon which the trial court relied upon in making these findings, and later, its ultimate conclusion as to Plaintiff's status as a limited-purpose public figure, were ultimately inadmissible and, therefore, not eligible to be considered per the clear language of the TPPA. Moreover, given the inadmissibility of the relied-upon exhibits, it is unclear *what* foundation existed for the trial court to conclude that Plaintiff had voluntarily injected himself into the controversy, including any evidence that he had voluntarily participated in the controversy, the extent to which Plaintiff had access to channels of effective communication, and finally, the prominence of the role Plaintiff allegedly played in the alleged public controversy.[9] Defendant's arguments and the trial court's conclusions have been entirely predicated upon evidence that should not have been considered. As such, we reverse the trial court's determination that Plaintiff is a limited-purpose public figure.

*Whether Plaintiff Made a Prima Facie Case*

Having determined that Plaintiff is not a limited-purpose public figure for purposes of his defamation and false light claims, we next address the propriety of the trial court's conclusion concerning whether Plaintiff made a prima facie case of each of his claims. "If the party petitioning for dismissal [under the TPPA] makes a 'prima face case that [the] legal action against the petitioning party is based on, relates to, or is in response to that

---

[8] The trial court also made a finding concerning Plaintiff's status as the registered agent and president of the Durham Farms Master Owners Association, Inc., by relying on an inadmissible exhibit. However, because the information contained in the exhibit was appropriately available elsewhere in the record, we take no issue with this finding for the purposes of this portion of our analysis.

[9] There does appear to be some dispute as to whether this public controversy was pre-existing for the purposes of Plaintiff's status. However, based on our disposition contained herein, we need not reach this issue.

party's exercise of the right to free speech, right to petition, or right of association[,]' the court 'shall dismiss the legal action unless the responding party establishes a prima facie case for each element of the claim in the legal action.'" *Nandigam*, 639 S.W.3d at 659-60 (quoting Tenn. Code Ann. § 20-17-105(a),(b)).

Defamation

In order to establish a prima facie case of defamation, the plaintiff must show that: (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999). In matters concerning defamation claims asserted by private individuals, Tennessee has previously adopted negligence as the standard. *West*, 53 S.W.3d at 647-48 (citing *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412 (Tenn. 1978)). Accordingly, in light of our foregoing analysis, the requisite standard on which Plaintiff must present his prima facie case for his defamation claim is one of negligence.

Here, the trial court determined that Defendant indeed published a statement that was defamatory to Plaintiff. "'Publication' is a term of art meaning the communication of defamatory matter to a third person." *Sullivan*, 995 S.W.2d at 571-72 (citing *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn. 1994)). Here, the record is clear in that it contains evidence that Defendant published her statement by way of posting the review at issue online. Thus, the first element of Plaintiff's claim is satisfied. "A statement is defamatory if it 'constitute[s] a serious threat to the plaintiff's reputation.'" *Finney v. Jefferson*, No. M2019-00326-COA-R3-CV, 2020 WL 5666698, at * 3 (Tenn. Ct. App. Sept. 23, 2020) (quoting *Revis v. McClean*, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000)). Moreover, "[t]he statement 'must reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule.'" *Id.* (quoting *Revis*, 31 S.W.3d at 253). "In determining 'whether a statement is capable of being defamatory, it must be judged within the context it was made.'" *Id.* (quoting *Grant v. Commercial Appeal*, No. W2015-00208-COA-R3-CV, 2015 WL 5772524, at *10 (Tenn. Ct. App. Sept. 18, 2015)). Here, the trial court determined that Defendant's statement, "[Plaintiff], especially, uses misleading tactics to lure in home buyers only to deceive them," was "capable of conveying a defamatory meaning." In support of this, the trial court noted that, over recent decades, Plaintiff had "worked hard to build a reputation as an honest person within his field of work" and that, in his line of work, "it is imperative that people with whom he is dealing know he is telling the truth." Moreover, the trial court found that Defendant's statement constituted more than a "mere annoyance," but rather constituted a "serious threat to [Plaintiff's] reputation" that had the potential to lower his "estimation in the community or even deter third persons from associating or doing business with him." Although Defendant argues in her brief that the trial court erred in finding her statement to be defamatory, she failed to raise this as a separate specific issue and, therefore, we conclude that she has waived its consideration.

The final essential element of Plaintiff's defamation claim centers on the applicable standard of fault. As noted earlier, the appropriate standard for Plaintiff's defamation claim here is one of negligence, not actual malice. Accordingly, Plaintiff must show that Defendant acted with negligence in failing to ascertain the truth of the statement. In analyzing this element, we note Defendant's own deposition testimony, which was submitted by Plaintiff in opposition to Defendant's petition to dismiss, wherein it is clear that Defendant was largely unaware of the extent of Plaintiff's involvement in Durham Farms, specifically the rental program. Moreover, the deposition indicates that Defendant did not attempt to verify any such involvement outside of apparently looking at Plaintiff's LinkedIn page. In light of this, we conclude that there was sufficient evidence for the trial court to conclude that Plaintiff established a prima facie case that Defendant acted with negligence in this matter.

False Light

In *West v. Media General Convergence, Inc.*, 53 S.W.3d 640, 645 (Tenn. 2001), the Tennessee Supreme Court recognized the tort of false light invasion of privacy as:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
> (a) The false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) The actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Id.* (quoting Restatement (Second) of Torts § 652E (1977)). However, in a departure from the Restatement, the *West* Court stated that "actual malice is the appropriate standard for false light claims when the plaintiff is a public official or public figure, or when the claim is asserted by a private individual about a matter of public concern."[10] *Id.* at 647. In accordance with our earlier discussion, we find that, despite our previous determination that Plaintiff does not constitute a public figure based on the record, this case *does* involve a matter of public concern. Similar to our discussion regarding a "matter of public concern" under the TPPA, we note that matters of public concern are "of political, social, or other concern to the community." *Lewis*, 238 S.W.3d at 297 (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Here, the statement at issue concerned a large residential community and purported changes and miscommunications that were occurring. We find that these statements are such that they are of a concern to a larger community and thus constitute a matter of public concern. Accordingly, because we find that a matter of public concern is implicated here, the actual malice standard applies to Plaintiff's false light claim.

---

[10] The *West* Court declined to adopt the actual malice standard for false light claims brought by private plaintiffs about matters of private concern. *West*, 53 S.W.3d at 647.

Therefore, in order for Plaintiff to show a prima facie case for his false light claim, he must show that the false light in which he was placed would be highly offensive to a reasonable person and that Defendant had knowledge of or acted with reckless disregard as to the falsity in which her statements placed Plaintiff.

First, the element of "placed" denotes some form of publicity in which Defendant has placed Plaintiff. In terms of a false light claim, publicity

"means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication . . . [i]t is one of a communication that reaches, or is sure to reach, the public." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 53 (Tenn. Ct. App. 2013) (quoting *Secured Fin. Solutions, LLC v. Winer*, No. M2009-00885-COA-R3-CV, 2010 WL 334644, at *4 (Tenn. Ct. App. Jan. 28, 2010)).

Considering the above understandings within the context of the record in this case, it is clear that there existed sufficient evidence to establish a prima face case regarding the element of publicity in this case. There is evidence, for instance, that Defendant published her statements online wherein they would reach the public. As such, this element is satisfied.

Plaintiff must next show that Defendant's statement placed him in a false light highly offensive to a reasonable person. It is important to note that the veracity of facts at issue in a false light claim is not an absolute defense. *West*, 53 S.W.3d at 645 n.5. Rather, "[t]he question is whether [the defendant] made discrete presentations of information in a fashion which rendered the publication *susceptible to inferences* casting [the plaintiff] in a false light." *Id.* Here, Defendant's statement clearly states and suggests that Plaintiff uses misleading tactics with regard to buyers for Durham Farms. In his own declaration, Plaintiff notes that the statement falsely accused him of using misleading tactics and "engaging in deceptive and dishonest conduct" which he found especially harmful in light of his contention that he was against the rental addition to Durham Farms. In light of the standard set forth above, we find that Defendant's conclusory statements and accusations against Plaintiff in her review that were published to a wide audience were "susceptible to inferences" that cast Plaintiff in a false light. Defendant's review clearly places Plaintiff in a light that denotes him as a deceptive man who uses misleading tactics with regard to potential buyers. We conclude that this would be highly offensive to a reasonable person.

Finally, Plaintiff must show that Defendant acted with actual malice in placing Plaintiff in a false light, specifically that she acted with actual knowledge or reckless disregard as to the falsity of the publicized matter and the false light in which the Plaintiff was placed. *Flatt v. Tenn. Secondary Sch. Athletic Ass'n*, No. M2001-01817-COA-R3-CV, 2003 WL 61251, at *3 (Tenn. Ct. App. Jan. 9, 2003); *Lewis*, 238 S.W.3d at 303. Here, we

find no evidence in this record to support a finding that Defendant acted with actual knowledge. In fact, to the contrary, Defendant made several statements in her deposition testimony indicating that she believed that Plaintiff was involved in the decision-making process at Durham Farms and handled the strategy and development. Moreover, Defendant testified that Plaintiff had been the "face of Freehold" and was "the one who has led our [HOA] meetings, who has challenged the residents, [and] who has delivered all the changes to us." Defendant also stated that Plaintiff was the "single point of contact for Freehold" for the residents and had been involved in the proposal to add the rental units to Durham Farms. Based on the foregoing, there does not appear to be sufficient evidence in the record that Defendant made her statements with *actual* knowledge of the falsity of the publicized matter and the false light in which the Plaintiff would be placed. Although we note that there is not sufficient evidence in the record to support a finding of actual knowledge, Plaintiff may make a prima facie case of false light by instead showing the Defendant made her statements with reckless disregard. Having reviewed the record on this issue, we find that there is not sufficient evidence to establish a prima facie case that Defendant acted with reckless disregard. As we stated previously, based on her own testimony, Defendant genuinely believed the veracity of her statements concerning Plaintiff's purported involvement with Durham Farm's development and the rental units. We find no indication in the record that Defendant ever entertained serious doubts as to the veracity of her statements, something that is relevant to determining whether she acted with reckless disregard. *See Winslow v. Saltsman*, No. M2014-00574-COA-R3-CV, 2015 WL 6330403, at *5-7 (Tenn. Ct. App. Oct. 21, 2015). Accordingly, in light of the foregoing, we conclude that there was not sufficient evidence in the record to show that Plaintiff established a prima facie case for false light against Defendant.

## CONCLUSION

Based on the foregoing, we affirm in part and reverse in part the trial court's grant of Defendant's TPPA petition for dismissal of Plaintiff's case against her.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE